**BRANCH–HESS VENDING SERVICES EMPLOYEES' PENSION TRUST, et al., Plaintiffs,**

v.

**Alfred E. GUEBERT, et al., Defendants.**

No. 89–3071.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 28, 1990.

Michael R. Lied, Edward F. Sutkowski, Peoria, Ill., for plaintiffs.

John M. Myers, Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

This cause is before the Court following a bench trial and the submission of post-trial briefs by both parties.

The Plaintiffs in this action are four self-directed defined benefit employee pension trusts within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(3) which provide benefits to their respective business' employees. The trustees of the plans are also named as Plaintiffs in this action.

The Defendant, Alfred Guebert, is an individual who has been a sales representative for interests in Capital Services & Investments, Inc. (CSI) and Associates Funding Group, Ltd. (AFG), has been a director of CSI, is an insurance agent, and holds himself out as providing financial services and consulting advice to employee benefit plans. Guebert's business, A.E. Guebert & Associates, Inc., is an Illinois corporation which is also named as a Defendant.

Plaintiffs generally allege that Guebert created their pension plans, agreed to perform all necessary paper work, and administer the plans for a yearly fee. The gist of Plaintiffs' allegations is that Guebert sold each plan investments in CSI without revealing material information regarding CSI which resulted in the loss of these investments.

Plaintiffs have alleged claims under the Security Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, the Illinois Securities Law, Ill. Rev.Stat. ch. 121½, ¶ 137.12, the Illinois Consumer Fraud and Deceptive Business Practices Act, *id.* ¶ 261 *et seq.*, common law agency, negligence, and fraud. As damages, Plaintiffs seek $170,000 in compensatory and $200,000 in punitive damages, a permanent injunction, an accounting, costs and attorneys' fees. Defendants have denied the material allegations of the complaint and raised affirmative defenses of statute of limitations and lack of reasonable reliance by the Plaintiffs.

## FACTS

The parties stipulated to the following facts. Plaintiff Branch–Hess Vending Service Employees' Pension Trust (Branch–Hess Trust) is an employee benefit plan which provided benefits to employees of Branch–Hess Vending Service, Inc. Plaintiff E.R. Tonielli, D.D.S., P.C. Employees' Pension Trust (Tonielli Trust) is an employee benefit trust which provided benefits to employees of E.R. Tonielli, D.D.S., P.C. Plaintiff Rommelman Electric Employees' Pension Trust (Rommelman Trust) is an employee benefit plan which provided benefits to employees of Rommelman Electric Co. Plaintiff Brown Electric Construction Co. Employees' Pension Trust (Brown Trust) is an employee benefit plan which provided benefits to employees of Brown Electric Construction Co.

The individual Plaintiffs Charles F. King, E.R. Tonielli, Carl H. and Doris Rommelman, and Donald A. Brown are duly appointed trustees of the Branch–Hess Trust, Tonielli Trust, Rommelman Trust, and Brown Trust, respectively.

Defendant Alfred E. Guebert is an individual residing in Red Bud, Illinois. Guebert has been a sales representative for interests in CSI, was a director of CSI from October 1986 until mid–1989, is an insurance agent, and holds himself out through A.E. Guebert & Associates, Inc., as providing financial services and consulting advice to employee benefit plans. Guebert transacts business in this district. A.E. Guebert & Associates, Inc. is an Illinois corporation whose principal place of business is in Red Bud, Illinois.

A.E. Guebert or its predecessor contracted with the Plaintiffs for assisting to establish the plaintiff trusts, for annually assisting with the completion of necessary pension plan documents for filing with the Internal Revenue Service, and for acting as a "go-between" between Plaintiffs and the plan actuaries. With regard to these activities, Guebert was from time to time assisted by other employees of A.E. Guebert, and fees charged by Guebert were placed in the account of A.E. Guebert. Testimony at trial revealed that these "other employees" were primarily Guebert's family members.

Investments made by Plaintiffs in the stock and investment notes of CSI and AFG constitute securities for the purpose of the Securities Exchange Act of 1934 and

the Illinois Securities Law. Plaintiffs are buyers or purchasers of the stock and investment notes for the purposes of the Securities Exchange Act of 1934 and the Illinois Securities Law.

The Branch–Hess Trust purchased the following interests in CSI:

| Date | Amount | Interest | Interest |
|---|---|---|---|
| 7/30/84 | $300.00 | 100 shares | |
| 7/30/84 | $20,000.00 | Note 1434 | 12.75% |
| 6/17/86 | $6,000.00 | Note 2552 | 11.75% |
| 1/30/87 | $27,371.65 | Note 1434 (renewal) | 10.75% |

The Branch–Hess Trust invested a total of $26,300.00 in CSI.

The Tonielli Trust purchased the following interests:

| Date | Amount | Interest | Interest |
|---|---|---|---|
| 12/28/83 | $250.00 | 100 shares | |
| 12/28/83 | $23,400.00 | Note 1081 | 12.75% |
| 12/17/84 | $43,616.00 | Note 1556 | 12.75% |
| 10/29/86 | $12,000.00 | Note 3171 | 12.25% |
| 6/26/86 | $32,024.79 | Note 1081 (renewal) | 12.25% |
| 6/1/87 | $59,692.10 | Note 1556 (renewal) | 10.0% |

### AFG Interest

| | | | |
|---|---|---|---|
| 11/19/87 | $10,000.00 | AFG–24 | 12.75% |

The Tonielli Trust invested a total of $79,266.00 with CSI and $10,000 in AFG.

The Rommelman Trust purchased the following interests in CSI:

| Date | Amount | Interest | Interest |
|---|---|---|---|
| 1/15/84 | $250.00 | 100 shares | |
| 1/15/84 | $10,000.00 | Note 1104 | 12.75% |
| 7/10/86 | $13,685.84 | Note 1104 (renewal) | 13.50% |
| 8/7/86 | $7,500.00 | Note 2714 | 12.25% |
| 10/31/86 | $3,400.00 | Note 3147 | 12.25% |

The last two investments were sold to personal trusts of the Rommelmans rather than to the Rommelman Trust. The Rommelman Trust invested $10,250.00 with CSI.

The Brown Trust purchased the following interests in CSI:

| Date | Amount | Interest | Interest |
|------|--------|----------|----------|
| 3/30/83 | $300.00 | 100 shares | |
| 3/30/83 | $10,000.00 | Note 2385 | 16.00% |
| 3/13/86 | $15,608.96 | Note 2385 (renewal) | 11.75% |

The Brown Trust invested a total of $10,300.00 with CSI.

The Plaintiffs paid the Defendants the following amounts for services connected with the plans: Branch–Hess Trust $4,150.00; Tonielli Trust $3,350.00; Rommelman Trust $2,700.00; Brown Trust $2,675.00.

The relevant time period for our consideration is 1986–87 when the Plaintiffs made several new investments and renewed their earlier investments in CSI and AFG.

The evidence adduced at trial established that between 1981 and 1983 Guebert assisted the Plaintiffs in setting up their defined benefit pension plans. Guebert was generally introduced to each Plaintiff by the Plaintiff's accountant or other associate. Guebert, working with the actuarial firm of Eisdon & Associates, and for a fee, would establish the plans and assist in all of the necessary paper work. Over the next several years Guebert continued to service the plans by filing tax returns and other such required documents. Typically Guebert would contact the Plaintiffs only about twice each year.

During 1983 Guebert became involved with CSI beginning with his wife's purchase of 1,000 shares in an affiliated company in February 1983. To become an investor in CSI an individual typically was required to purchase a nominal number of shares of stock following which the investor could loan money to the company through investment notes paying anywhere from 10.0–16.0% annual interest. Between 1983 and November 1987 Guebert and his immediate family invested approximately $68,000.00 in CSI.

CSI in turn would loan this money to related entities for investment in real estate ventures. The vast majority of CSI's assets consisted of these loans to its related entities.

After his initial investment in CSI Guebert became a sales representative for CSI and received a 7% commission on his sales of CSI securities. Guebert is a high school graduate who is self-taught in business. Principally an insurance salesman, Guebert has become self-educated in pension and tax matters and served on the board of directors of a bank in his home town of Red Bud, Illinois. Prior to his involvement with CSI Guebert had never invested in securities.

Plaintiffs presented Joseph Glawe, C.P.A., a partner in the firm of Clifton, Gunderson & Co. as an expert witness. Mr. Glawe testified that the early financial statements of CSI were completely unreliable and were not prepared in accordance with generally accepted accounting principles. In 1984 the format of the financial statements changed and from that point on they were prepared according to generally accepted accounting principles although no independent audit was undertaken and the reports only contained the information provided by CSI management.

An examination of these financial reports by Mr. Glawe indicated that the increase in the loan amounts to related entities was due to the failure of these related parties to make timely payments and the rolling over of the interest. By 1987 97% of CSI assets consisted of loans to related entities.

Guebert was elected to CSI's board of directors at the annual meeting of shareholders on September 25, 1986. At this time Guebert received financial reports showing that CSI was experiencing a cash flow problem but he was told by the president of CSI, William Bates, that efforts were underway to solve this problem.

Guebert attended four directors meetings during 1987 and was aware of continuing cash flow problems which were reported in the 1985/1986 annual report. However, at a directors meeting on October 6, 1987, CSI's treasurer reported a positive cash flow for Aug.–Sept. of $51,000.00. At this meeting the directors also approved the 1986/1987 financial report which showed that the company had lost money but that the cash flow problem and income had improved. Unbeknownst to Guebert, Bates had altered the notes to this financial report prepared by CSI's accountant which discussed CSI's looming insolvency.

On December 7, 1987, Guebert attended a board of directors meeting at which Bates reported that CSI's financial situation was so bad that the company would have to declare bankruptcy. CSI filed bankruptcy on March 1, 1988, and that case is presently pending in this district.

All of the Plaintiff trustees testified that to induce them to purchase CSI investments Guebert represented that he was personally familiar with the directors of CSI; that it was a growing company and the investment was safe; that CSI was in the real estate development business and owned or had interests in properties in Springfield, Illinois, and the Lake of the Ozarks region of Missouri which were condominium time-share and resort properties; that CSI intended to loan the proceeds of the investments to affiliates which owned real property; and that the loans would be secured as if CSI were a bank making real estate loans. Guebert obtained this information from seminars regarding CSI investments.

All of the Plaintiff trustees are successful business people with substantial incomes and other investments. The Plaintiffs failed to take any steps to protect their investments or interests in CSI. Specifically, the Plaintiffs failed to read financial reports and other information and, in some cases, failed to heed the warnings of their accountants or other financial advisors. It is also noteworthy that all Plaintiffs had attorneys, certified public accountants, and investment brokers who provided them services in their respective fields. Each of the Plaintiff trustees was aware that Guebert received commissions on the CSI securities he sold the plans and insurance commissions on life insurance he sold on the lives of the trustees although the Plaintiffs were not aware of the exact amount of these commissions.

When they made their initial investments in CSI, the Plaintiffs signed a subscription agreement which contained the following language:

It is understood by the undersigned subscriber the Company has authorized no person to make representations to him, either oral or written, of any information regarding the Company or this Offer which is not contained herein, and the undersigned hereby warrants to the Company that such representations, if any, have been disregarded.

The later investments in 1986 and 1987 were all on forms which contained similar statements as well as the following additional language:

THE UNDERSIGNED HEREBY WARRANTS, to the following:

(a) that he/she has had the opportunity to review all records of the Company as he/she deems necessary in executing this agreement, to include the most recent financial statement of the Company, a copy of which has been provided herewith and of which the undersigned hereby acknowledges receipt, and

(b) that no other representations made to him/her, either oral or written, by any other person, has been material in the execution of this agreement and subscription.

In 1986 prior to making the decision to renew the notes, Tonielli had received CSI annual reports and had reviewed them. Brown also testified that he had received an annual report every year. King and Rommelman testified that they had never received any financial reports.

## LAW

### A. *§ 10(b) and Rule 10b–5*

Count III of Plaintiffs' complaint seeks recovery under § 10(b) and Rule 10b–

**1340**

5. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. Rule 10b–5 provides in relevant part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, ...
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading
>
> . . . .

*Id.* To state a claim under Rule 10b–5 Plaintiffs must demonstrate that the Defendants: (1) made an untrue statement of a material fact or omitted a material fact that rendered the statements made misleading; (2) in connection with a securities transaction; (3) with the intent to mislead; and (4) which caused Plaintiffs' loss. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir.1989).

■ Prior to trial and in their pretrial submissions Defendants argued that "reasonable reliance" by the Plaintiff was an independent element of a Rule 10b–5 violation. In *Flamm v. Eberstadt*, 814 F.2d 1169, 1173 (7th Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987), the circuit court stated that "reliance means only materiality and causation in conjunction," and that reliance is no longer "an element independent of causation and materiality in a case under Rule 10b–5." *Id.* at 1174. Rather than constituting a separate element, reliance is one common way of establishing the causal link between the defendant's misconduct and the plaintiff's decision to buy or sell. *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988) ("[r]eliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury."); *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 (7th Cir.1988).

■ Furthermore, in a case involving face-to-face transactions and only material omissions, a plaintiff need not prove reliance; the omission's materiality and the defendant's duty to disclose supply the requisite causation. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Rowe*, 850 F.2d at 1233 n. 4.

The parties stipulated that the CSI investments constituted securities within the meaning of the Securities Exchange Act of 1934. The principal focus of the Plaintiffs concerns Guebert's alleged omission to inform them that CSI was in a negative cash flow situation.

■ An omission or misstatement is material if a substantial likelihood exists that a reasonable investor would find the omitted or misstated fact significant in deciding whether to buy or sell a security, and on what terms to buy or sell. *Basic, Inc.*, 485 U.S. at 231, 108 S.Ct. at 983. Stated another way, an omission or misstatement is material if it is substantially likely that a reasonable investor would have viewed the omitted or misstated fact as significantly altering the "'total mix' of information made available." *Id.* (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)).

While the test of materiality depends upon the hypothetical *reasonable* investor, the actual Plaintiffs' own testimony is both persuasive and revealing. Each Plaintiff trustee testified that they assumed Guebert was making a commission on the CSI investment sales. Furthermore, it would not have mattered to them if Guebert did not know all but only "most" of CSI's directors, and that CSI loaned the investment proceeds to related entities rather than owning the land itself. Other facts, such as CSI's involvement in real estate and that CSI offered above market interest rates were in fact true.

The only fact which this Court finds could be material within the meaning of Rule 10b–5 is that CSI was experiencing negative cash flow due to the rolling over of the interest on its loans to its related entities.

At the time they purchased their initial investments in CSI and when they rolled over those investments in 1986 and 1987, each of the Plaintiffs signed a subscription agreement containing language which was quoted previously in this order. In those agreements, each Plaintiff warranted that any oral representations had been disregarded and were not material to their investment decision. In addition, in the latter agreements the Plaintiffs acknowledged receipt of the most recent financial statement which disclosed the allegedly omitted information.

At trial, Tonielli and Brown acknowledged receiving these reports although they did not read them or "only glanced at them." Rommelman and King denied ever receiving any financial reports contrary to their representations in their subscription agreements.

■ These warranties return us to the concept of justifiable reliance which insures that there is a causal connection between the misrepresentation and the plaintiff's harm. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 530 (7th Cir.1985). In short, when the issuer discloses the truth (as was done here in the annual financial report) an oral variance is not a legal cause of the injury. *Id.* (citing *Zobrist v. Coal-X, Inc.,* 708 F.2d 1511, 1517 (10th Cir.1983)).

A different way of viewing this variance between the financial reports and Guebert's alleged omission is that an investor who has the truth in writing "is hard put to say that the inconsistent· oral statement significantly altered the total mix of information." *Astor Chauffeured Limousine Co. v. Runnfeldt Invest. Corp.,* 910 F.2d 1540, 1547 (7th Cir.1990) (quoting *Acme Propane, Inc. v. Tenexco, Inc.,* 844 F.2d 1317, 1322 (7th Cir.1988)). Therefore, the omitted information was not material. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

■ The final element of a Rule 10b–5 violation is "intent to mislead" which has been defined by the Supreme Court as "intent to deceive, manipulate or defraud."

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The *Hochfelder* Court left open the question of whether recklessness was sufficient to state a claim under Rule 10b–5. *Id.* at 194 n. 12, 96 S.Ct. at 1381 n. 12. In *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033 (7th Cir.1977) the circuit court accepted the Court's invitation and held that recklessness was sufficient. *Id.* at 1044. This type of recklessness has been described as "closer to being a lesser from of intent than merely a greater degree of ordinary negligence." *Sanders v. John Nuveen & Co.,* 554 F.2d 790, 793 (7th Cir. 1977). It is a difference in kind, not just degree. *Id.*

The appropriate test as set forth in *Sundstrand* requires that "the danger of misleading buyers must be actually known or so obvious that any reasonable man would be legally bound as knowing, and the omission must derive from something more egregious than even 'white heart/empty head' good faith." *Sundstrand,* 553 F.2d at 1045.

There was no evidence of an actual intent on Guebert's part to mislead the Plaintiff's. Considering that Guebert and his family lost $68,000.00 of their own money in CSI investments, at worst we can conclude that this was a case of "white heart/empty head." While Guebert may have been negligent in relying upon the assurances of William Bates and in failing to undertake an independent investigation of CSI, negligence alone is insufficient to state a claim under Rule 10b–5. *Hochfelder,* 425 U.S. at 193, 96 S.Ct. at 1380–81.

Shortly before trial, Defendants were granted leave to amend their answer and add a statute of limitations affirmative defense following the circuit court's decisions in *Short v. Belleville Shoe Manufacturing Co.,* 908 F.2d 1385 (7th Cir.1990) and *Astor Chauffeured Limousine Co. v. Runnfeldt Invest. Corp.,* 910 F.2d 1540 (7th Cir.1990) which held that a claim under § 10(b) of the Securities Exchange Act of 1934 was subject to a one year statute of limitations. The court expressly left open the question in both cases whether this shortened limita-

tions period would be applied retroactively. However, the court did indicate that it would not be applied retroactively if the plaintiff could demonstrate reliance on the prior three year limitation period. *Id.* at 1544–45. Our disposition of this case renders any extended discussion of this question unnecessary.

### B. *Illinois Securities Law*

▮▮▮▮▮ Count IV of Plaintiffs' complaint seeks recovery under the Illinois Securities Law, Ill.Rev.Stat. ch. 121½, ¶ 137.12. The elements of a violation of this statute generally parallel those for a Rule 10b–5 violation. *Hidell v. International Diversified Invest.*, 520 F.2d 529 (7th Cir.1975). Therefore, the defects in Plaintiffs' Rule 10b–5 claim are similarly fatal to their Illinois Securities Law claim.

▮▮▮▮▮ Defendants also argue that Plaintiffs have failed to comply with the six month limitation period embodied in ¶ 137.13 necessary to obtain recision. This six month period begins to run at the time the purchaser acquires knowledge that the sale is voidable. Plaintiffs pled that such knowledge was acquired during November 1988 and that proper notice was given on February 1, 1989, within the six month limit.

Knowledge that a sale is voidable is a mixed question of law and fact on which a layman is entitled to first acquire knowledge from an attorney. *Ansbro v. Southeast Energy Group, Ltd.*, 658 F.Supp. 566 (N.D.Ill.1987); *Buehl v. Dayson*, 127 Ill. App.3d 958, 82 Ill.Dec. 869, 469 N.E.2d 403 (5th Dist.1984). Therefore, it is entirely possible that the January 15, 1988, letter from CSI to investors as well as CSI's bankruptcy filing on March 1, 1988, did not put the Plaintiffs on notice that the sales were voidable. In fact, the Plaintiffs most likely did not learn of the voidableness of the sales until they consulted with their attorneys.

### C. *Consumer Fraud Act*

▮▮▮▮▮ Count V of Plaintiffs' complaint seeks relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 261 *et seq.* Under the Act Plaintiffs must demonstrate: (1) a deceptive act or practice; (2) an intent by Defendants that they rely on the deception; and (3) the deception occurred in the course of conduct involving trade or commerce. *Crowder v. Bob Oberling Enterprises, Inc.*, 148 Ill.App.3d 313, 316, 101 Ill.Dec. 748, 499 N.E.2d 115 (4th Dist.1986). A misrepresentation known to be false or made in culpable ignorance of its truth (recklessly) is fraudulent. *Id.*

The defects in Plaintiffs' Rule 10b–5 claim relating to Guebert's intent are equally fatal to· their consumer fraud act claim.

### D. *Agency*

▮▮▮▮▮ Count VI of Plaintiffs' complaint seeks recovery under a theory of common law agency. To establish an agency or fiduciary relationship the Plaintiffs must show more than that they trusted Guebert. They also must establish that Guebert accepted the trust and confidence reposed by the Plaintiffs. *De Witt County Public Bldg Comm'n v. County of De Witt*, 128 Ill.App.3d 11, 26, 83 Ill.Dec. 82, 469 N.E.2d 689 (4th Dist.1984). As stated in the *De Witt County* case,

> where the parties to a purported fiduciary relationship deal with each other at arm's length, the party allegedly subject to influence is fully capable of attending to [his] business affairs, and there is no evidence that the alleged fiduciary agreed to exercise [his] judgment on behalf of the alleged dependent party, no fiduciary relationship is deemed to exist.

*Id.* The Plaintiff trustees are all successful business people who dealt with Guebert at arm's length. Further, each is obviously fully capable of handling his own business affairs. Lastly, there is no evidence that Guebert agreed to act as their agent or fiduciary for the purpose of rendering investment advice. While Guebert was their agent for purposes of administering their pension plans and performing the necessary paper work, this relationship does not carry over to the provision of investment advice.

### E. *Negligence*

 Count VII of Plaintiffs' complaint seeks recovery under a negligence theory. Our prior findings regarding the scope of Guebert's agency lead us to conclude that he did not owe a duty to the Plaintiffs regarding the CSI investments. However, even if Guebert had owed a duty to the Plaintiffs, their recovery of economic loss is precluded because Guebert was not in the business of supplying information for the guidance of others. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 89, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982).

 Defendants have also raised the affirmative defense of contributory negligence. The Plaintiffs clearly were contributorily negligent in turning a blind eye, signing documents (including tax returns) in blank, and failing to read financial reports.

### F. *Fraud*

 Count VIII of Plaintiffs' complaint seeks recovery under a theory of common law fraud. Without going into great detail, our prior findings relating to Guebert's intent clearly preclude any finding that he acted with fraudulent intent.

### CONCLUSION

*Ergo,* pursuant to Fed.R.Civ.P. 52, we find in favor of the Defendants and against the Plaintiffs on all counts of the complaint.

Case CLOSED.