**SPEX, INC., Plaintiff,**

v.

**The JOY OF SPEX, INC., Craig Scott individually and d/b/a Craig Scott Optician, Inc., Defendant.**

No. 93 C 3762.

United States District Court,
N.D. Illinois, E.D.

Feb. 17, 1994.

Kevin T. Martin, Sheryl A. Pethers, Swanson, Martin & Bell, Chicago, IL, for Spex Inc.

Kenneth Winter Bley, Keevan David Morgan, Durkin, Morgan, Roberts, Barnett & Bley, Chicago, IL, for The Joy of Spex, Inc., and Craig Scott.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On May 21, 1993, Spex, Inc. ("Plaintiff") filed a complaint against The Joy of Spex, Inc., and Craig Scott individually and d/b/a Craig Scott Optician, Inc. ("Defendants") in the Circuit Court of Cook County, Illinois, that was removed to this court on June 23, 1993 ("Complaint"). The six-count Complaint seeks injunctive and other relief from the Defendant for violations of (1) section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) the Deceptive Trade Practices Act, 815 ILCS 510/2; (3) The Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2; (4) the Anti–Dilution Act, 765 ILCS 1035/15; and for (5) Theft of Business; and (6) Common Law Fraud.

On July 1, 1993, the Plaintiff moved for a Preliminary Injunction prohibiting the Defendants from using the word, "Spex" or any misspelling or homonym thereof in connection with their business. Subsequently, the Defendant moved to consolidate the Preliminary Injunction hearing with a final hearing on the merits for injunctive relief only.[1] This Court granted that motion and, accordingly, conducted a bench trial on July 14, 1993 through July 19, 1993. On July 14, 1993, the Court decided that the issues warranted further consideration and took the case under advisement, declining to issue any injunction against the Defendant. Since that time, this Court has considered the evidence and the credibility of the witnesses, the testimony, exhibits, memoranda of law, arguments of counsel, and each party's proposed findings of fact and conclusions of law. Now fully advised in the matter, the full trial on injunctive relief having been concluded, this Court reports the following findings.

## FINDINGS OF FACT

1. Plaintiff, Spex, Inc., has been incorporated under Illinois law since 1979. Its principal place of business is in Chicago, Illinois.

2. Defendant, The Joy of Spex, Inc., has been incorporated under Illinois law since December 1991, with its principal place of business also in Chicago, Illinois. The Joy of Spex, Inc. has had one store located at 3341 North Broadway in Chicago since its incorporation.

3. Defendant, Craig Scott, is the President and 50% owner of the Joy of Spex, Inc. Scott is also the President of Craig Scott Optician, Inc., an eyewear and eye care establishment in Illinois. Michael Sauer, the other 50% owner of The Joy of Spex, Inc., has managed that corporation's 3341 North Broadway store since January, 1992.

4. Both the Plaintiff and the Defendant sell lenses and "high end" fashion quality eyewear frames. "High end" fashion eyewear does not mean, "expensive," but connotes exclusive, quality eyewear. Although their inventories are not identical, the Plaintiff and the Defendant carry many of the same brands of "high end" eyewear.

5. Allan Weiner is the owner of Spex, Inc. Spex, Inc. has four stores located at Skokie, Illinois, 680 North Lake Shore Drive, 1800 North Clybourn Street and 700 North Michigan Avenue. The downtown Skokie store opened in 1980, the North Lake Shore Drive store opened in 1983, the 1800 North Clybourn Street store in 1987, and the North Michigan Store in 1991. Each store has operated under the name, "Spex, Inc." since its opening. Beginning in 1983, Spex, Inc.

---

1. Each count of the 6–Count Complaint requests injunctive relief.

started to concentrate on exclusive, quality fashion eyewear.

6. Weiner chose his company's trade name after overhearing a group of young men talking about their "specs" and seeing a picture of a store in Boston, Massachusetts, called "Spex." He incorporated his business under the name Spex, Inc. after determining that this trade name was not being used in Illinois.

7. Defendant Scott chose the name, "The Joy of Spex, Inc." because it is a parody of a title of a book called "The Joy of Sex." Scott thought of this name sometime between 1983 and 1985.

8. The Joy of Spex, Inc. opened at North Broadway in March 1992. At the time The Joy of Spex was incorporated, Scott was aware of the presence of Spex, Inc. in Chicago. It was the parody, however, and not the name, "Spex Inc." which prompted him to choose the name, "The Joy of Spex, Inc." Before incorporating, Scott called the State of Illinois which informed him that he was free to use "The Joy of Spex" as a business name.

9. The "Joy of Spex, Inc." logo, which was personally selected by Scott, consists of the words, "The Joy of" separated by a pair of eyeglasses from the words, "Spex, Inc.," that appear immediately below the eyeglasses.

10. The word "spex," which cannot be found in the dictionary, is a homonym for "specs," which does appear in standard American dictionaries. The definition of "specs" includes "specifications"; when that word is used with respect to eyeglasses, however, it means "spectacles." Another homonym for "spex" is "specks," which can refer to small particles of dust or other materials.

11. A significant number of distributors and retailers selling optical frames and products available throughout the Chicago area and nationally use the word "Specs" and "Spex" in their names for eyewear. Telephone book listings from throughout the nation list several optical businesses that use the words "specs" or (less frequently) "spex."

12. Spex, Inc. regularly runs adds in the Chicago newspaper, The Reader. The Plaintiff has also advertised in The Chicago Tribune, The Chicago Sun–Times, and in national and regional publications such as Playboy, Elle, and North Shore magazines. Weiner also promotes the "Spex, Inc." trade name through such means as a toll-free telephone number, "1–800–SpexInc" and by having the last four telephone number digits of his four stores spell the word, "Spex." Wiener promotes the Spex, Inc. trade name in his role as a consultant to other "high-end" eyewear establishments in a 10–state area.

13. Spex, Inc. targets its advertising to attract affluent customers with discriminating and sophisticated tastes. Nevertheless, 75–80% of Spex, Inc.'s business comes from ophthalmologists who refer business to that company.

14. 3–5% of The Joy of Spex, Inc.'s business comes from physician referrals, and the vast majority of its business comes directly from customers. The Joy of Spex, Inc. attempts to attract business specifically from the homosexual community through advertisements in publications such as Lamda and Windy City Times which are targeted to that community. In March 1992, the Defendants also began advertising in The Reader.

15. About 10% of Spex, Inc.'s sales are interstate. The Joy of Spex, Inc. has significantly fewer out-of-state customers, but occasionally ships products to customers who live in other states and Canada.

16. On approximately four occasions, The Joy of Spex Inc. advertised discounts on frames in The Reader. This was problematic because suppliers for the frames so advertised do not permit retailers to offer discounts. The Defendants explained to customers that these advertisements were errors and that any honored discounts pertained to lenses and not frames.

17. Stephanie Pelz, an employee at Spex, Inc. since 1980, managed the Spex, Inc. store at 680 North Lake Shore Drive throughout 1992 and until the end of March 1993. Pelz and Weiner each have dealt with customers who selected eyewear and then cancelled their proposed purchases when the store would not honor discounts that The Joy of Spex, Inc. advertised in The Reader. Some

of these customers mistakenly believed that the Joy of Spex, Inc. and Spex, Inc. were affiliated in some way and that a discount was available at both stores.

18. Sauer, who works at the Joy of Spex, Inc. five days per week, received one or two telephone calls from persons who inquired whether the two businesses were affiliated. Two drop-in customers at The Joy of Spex, Inc. also asked whether there was a connection between the stores. Scott, who works at The Joy of Spex, Inc. two days per week, once encountered a consumer who asked him, "This isn't Spex, is it?" Scott also received other inquiries from people who wondered whether the Joy of Spex, Inc. was "Contacts & Specs, Inc."—another store in the Chicago area.

19. Weiner, who works at different Spex, Inc. stores three to four days per week, received more than 10 telephone calls from persons inquiring whether his stores were affiliated with The Joy of Spex, Inc. or whether it offered discounts. He also dealt with approximately the same number of customers on his premises who thought there was such an affiliation. On occasion, these customers would ask for the store's advertised discounts; in at least one instance, a sale was lost because Spex, Inc. would not honor an advertised *Reader* discount from The Joy of Spex, Inc.

20. While at the Spex, Inc. store on North Lake Shore Drive between December 1992 and March 1993, Pelz received between 15 and 20 calls from persons inquiring about The Joy of Spex, Inc. Many of these callers would ask for the Defendants' advertised discounts on eyewear. On two occasions, customers entered the Spex, Inc. store on Lake Shore Drive, agreed to purchase eyeglass frames, and then left when Pelz told them that they were not in the store that was offering discounts.

21. During the days when he works at Spex, Inc. stores, Weiner generally receives approximately 5–6 calls per day from potential customers. On those days, approximately 10 to 30 people typically visit the store. Weiner has not conducted any market surveys regarding advertising for Spex, Inc., nor has he conducted surveys to estimate the level of confusion in the market existing between Spex, Inc. and The Joy of Spex, Inc.

22. Joanne Frey, a Spex, Inc. customer, first saw an advertisement for The Joy of Spex, Inc. in *The Reader* in January or February 1993. Ms. Frey, who has a Ph.D. in Education and teaches at Northeastern Illinois University, testified that when she saw the advertisement, she assumed that Spex, Inc. and The Joy of Spex, Inc. were affiliated because the word, "Spex" drew her attention.

## CONCLUSIONS OF LAW

The Plaintiff seeks to enjoin the Defendants from using the word, "Spex" or any homonym thereof in their trade name. Injunctive Relief is inappropriate, however, because the Plaintiff fails to show that "Spex, Inc." is a protectible trade name.

*Count I.*

■ The trade name, "Spex, Inc." is not entitled to protection under section 43(a) of the Lanham Act. *See, McCarthy on Trademarks and Unfair Competition,* 3rd Ed., Vol. 1 § 4.04[4], 4–15 (1993). Section 43(a) provides that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, ... which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (1993).

*The Trademark/Trade Name Spectrum.*

■ In order to determine whether the Defendants have violated the Lanham Act,

this court must first inquire whether the name, "Spex, Inc." is a protectible trade name. Under common law, this determination is based upon the same principles that apply to trademarks. *See, McCarthy on Trademarks*, § 4.04[4] at 4–15. Hence, as with trademarks, whether a trade name is entitled to protection depends upon where it falls upon a spectrum ranging through (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful. *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977).

■ The separate categories on the trademark spectrum are entitled to varying degrees of protection. "Arbitrary or Fanciful" and "Suggestive" trademarks/trade names are protectible. *Id.* In contrast, "[a] generic or common descriptive term can never function as a trademark." *Liquid Controls, Corp. v. Liquid Control Corp.*, 802 F.2d 934, 935 (7th Cir.1986). "[A] term that is merely descriptive may be used as a trademark if it has acquired secondary meaning." *Id.*

■ Before placing "Spex, Inc." on this spectrum, it is important to recognize that "[d]issecting marks often leads to error. Words which could not individually become a trademark may become one when taken together." *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 379 (7th Cir.1976). In fact, each mark must be considered as a unit; individual words of a trade name should not form the basis of comparison. *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1430–31 (7th Cir.1985). Nevertheless, "[i]t is perfectly acceptable to separate a compound mark and discuss the implications of each part thereof with respect to the question of descriptiveness provided that the ultimate determination is made on the basis of the mark in its entirety." *McCarthy on Trademarks*, § 11.10[2] at 11–48, *citing, In re Hester Industries, Inc.*, 230 U.S.P.Q. 797, n. 5 (TTAB 1986). Accordingly, although this court may examine the words, "Spex," and "Inc." alone, the final determination regarding protectibility must be based upon the entire phrase, "Spex, Inc."

■ The name "Spex, Inc." most accurately falls in the "merely descriptive" category on the spectrum. "A merely descriptive term is one that specifically describes a characteristic or an ingredient of a product." *Liquid Controls, Corp.*, 802 F.2d at 936. "Merely descriptive terms are generally not protectible as trademarks 'both because they are poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature.'" *Id.* Moreover, "[s]ince there is the greatest likelihood that such [descriptive] terms will form a part of the trade name used by competitors, there is a corresponding probability that the [descriptive] word will not unambiguously advise the public of the source of the goods or services." *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 218 (7th Cir.1978) (finding that the word, "Telemed" was merely descriptive of a service mark describing (1) the telephone aspect of its service, and (2) its availability to the medical community), *citing, Homemakers Home and Health Care Services, Inc. v. Chicago Home for the Friendless*, 484 F.2d 625 (7th Cir.1973). By employing a misspelling of the word, "specs," the name, "Spex, Inc.," describes, or "conveys the essence," of a store that sells glasses. *See, Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 674 (7th Cir.1982).

■ "Spex, Inc." is *not* most accurately classified as a generic term. "A generic term is one that is commonly used as the name of a kind of goods." *Liquid Controls, Corp.*, 802 F.2d at 936. "Unlike a trademark, which identifies the source of a product, a generic term merely specifies the genus of which the particular product is a species." *Id.* In the case at bar, "Spex, Inc." is most readily translated as a misspelling of "Specs, Inc." or, most simply—"Eyeglasses, Incorporated." Although the phrases, "Spex, Inc.," or "Eyeglasses, Incorporated" do convey or describe that the Plaintiff is involved in the eyewear business, they do not explicitly indicate that such business is a "glasses store" or "spectacles shop." Hence, the term "Spex, Inc." does not specify a "genus" of which the Plaintiff is a "species." *See, McCarthy on Trademarks*, § 12.05[1] at 12–48.

■ The Plaintiff's argues that "Spex, Inc." is entitled to protection because "Spex" is a suggestive term requiring a leap of imagination in order to associate the name with the product. The "suggestive" category, however, does not provide the most accurate classification for "Spex, Inc." In this regard, the 7th Circuit has explained:

> [A suggestive term] suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. The 'imagination' required to link a suggestive term with the corresponding product refers to the mental process required to connect a name that is incongruous or figurative with the product (e.g., 'Roach Motel' with an insect trap or 'TIDE' with soap) ...

*Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434, 443 (7th Cir.1990) (citations and quotations deleted).

Because it is a homonym for "specs," the word "spex" does not require the observer or listener to make a leap of the imagination in order to link the term to the relevant product—spectacles. The absence of this leap is effectively demonstrated when considering the much greater jump necessary in order to connect terms such as "TIDE" and "Roach Motel" with their products. Although "spex" may be an unfamiliar word when observed, its meaning is readily understood when the word is translated into its aural equivalent, "specs"—especially when used in the context eyewear.

■ The Plaintiff further asserts that "spex" is a suggestive term because the word "spex" could refer to various types of businesses besides eyewear. The Plaintiff explains that "spex," as a homonym for "specs," might refer to an engineering or other enterprise that deals with architectural "specifications." "Spex" might also connote a business that uses the term to mean "specks" of dust or dirt. This argument fails, however, because it favors a view of uninformed consumers that this circuit has rejected. *See, McCarthy on Trademarks*, § 11.06[3] at 11–28. In fact, The 7th Circuit has explained:

Consumer perception should be assessed by examining the average potential consumer in the context of the existing marketplace and exposed to the information currently available in the marketplace. This approach is supported both by law and logic.... Typically, someone must first be informed of the existence and nature of a product before he chooses to purchase or consume it. It is the perception of this somewhat informed audience that massive advertising is intended to impact.... *In addition, evidence of the context in which a mark is used on labels, packages or in advertising material is probative in assessing the likely reaction of prospective purchasers to the mark.*

*G. Heileman Brewing Co. v. Anheuser–Busch, Inc.*, 873 F.2d 985, 995 (7th Cir.1989) (citations deleted) (emphasis added); *see also, In re Abcor Development Corp.*, 588 F.2d 811 (C.C.P.A.1978). In this case, it is reasonable to conclude that a consumer who is informed about the "nature and existence" of eyewear, who seeks to purchase that product, and who has seen the name, "Spex, Inc." in the context of that company's advertisements would associate the word, "spex" with eyewear and not with dust or architectural specifications.

*Secondary Meaning.*

■ Having determined that "Spex, Inc." is a "merely descriptive" trade name, this court may find that this name is protectible only if it has acquired "secondary meaning." *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir.1988). A trade name has acquired secondary meaning "if most consumers have come to think of the word not as descriptive at all but as the name of the product." *Id.* "The burden of proof of secondary meaning is upon the party trying to establish legal protection for the mark. This means the plaintiff in an infringement suit ..." *McCarthy on Trademarks* § 15.11[1] at 15–49.

■ With respect to sufficiency of evidence, a plaintiff's burden of establishing secondary meaning decreases as the strength of

the mark increases. In this regard, the Seventh Circuit has explained:

> In essence, the distinctiveness and popularity of the trade-mark will determine its relative strength or weakness and will accordingly define the scope of protection to be accorded the mark against the confusing similarity of others. A mark is strong if it is conspicuously distinctive; it is distinctive if the public has already been educated to accept it as the hallmark of a particular source. Then too, a mark can be distinctive either because it is unique, that is, distinctive in itself, because it has been the subject of wide and intensive advertisement, or because of a combination of both. It seems to follow as a necessary conclusion that the trade-mark has the advantage of strength where its owner has invested a considerable amount in advertising or can point to a long period of time during which his mark was used on a great quantity of articles as symbolic of his business.... If the mark is weak, its protection may have an 'extremely narrow scope'; and may indeed be limited to similar goods similarly marketed.

*Telemed Corp.*, 588 F.2d at 219.

In other words:

> [A]s a general rule of thumb, the more descriptive the term, the greater the evidentiary burden to establish secondary meaning. That is, the less distinctive the term, the greater the quantity and quality of evidence of secondary meaning needed to prove the requisite degree of distinctiveness.

*McCarthy on Trademarks* § 15.10 at 15–44.

▪ In this case, applying the factors enumerated in *Telemed*, the name, "Spex, Inc." is a rather weak mark because it is not sufficiently distinctive. The Plaintiff did use the name, "Spex, Inc." for a considerable period of time before the Defendant began using the name, "The Joy of Spex, Inc." Yet, the fact that the words in the trade name are relatively common with respect to eyewear weighs against a finding that the mark is distinctive. As explained above, "spex" is merely a homonym for "specs," which is commonly understood to mean "glasses" and which is found in the dictio-

nary. The word, "incorporated" is often used to describe businesses. Furthermore, the Plaintiff has provided insufficient evidence upon which this court could conclude that "Spex, Inc." was the subject of "wide and intensive advertisement." Although the store did appear in several advertisements, the fact that most of its business comes from referrals suggests that the name, "Spex, Inc." has not gained notoriety or conspicuousness through advertisements to the public. *See, Telemed Corp.*, 588 F.2d at 219–220.

Accordingly, because the name, "Spex, Inc.," is not a strong mark, the Plaintiff bears a relatively heavy burden for establishing secondary meaning. *See, Id.* at 219. "In determining whether a mark has acquired secondary meaning, the courts consider several factors [including]:

> *Direct Evidence*
> (a) direct consumer testimony
> (b) consumer surveys
> *Circumstantial Evidence*
> (c) exclusivity, length, and manner of use
> (d) amount and manner of advertising
> (e) amount of sales and number of customers
> (f) established place in the market
> (g) proof of intentional copying."

*Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1267 (7th Cir.1989).

▪ In the case at bar, the Plaintiff has failed to show sufficient direct evidence of secondary meaning to meet its burden. The bulk of the Plaintiff's evidence showing that consumers identify the words, "Spex, Inc." or "Spex" with Spex Inc.'s product consisted of testimony by the owner and an employee of Spex, Inc. As the Seventh Circuit has explained, such testimony is weak evidence of secondary meaning:

> The conclusory testimony of dealers and wholesalers as to consumer recognition is often characterized as of "little value," since it may be biased and does not necessarily reflect the views of the consumer class. If the relevant buyer class is primarily consumers, then conclusory testimony of dealers is merely opinion evidence as to what their customers have in mind.

*Echo Travel, Inc.,* 870 F.2d at 1268 n. 7. In this case, the only *actual* consumer testimony suggesting secondary meaning consisted of the testimony of one consumer, Joanne Frey, who said that she associated the name, "Spex," with "Spex, Inc." Accordingly, the Plaintiff's presentation of consumer testimony as direct evidence of consumer recognition is sparse and inconclusive for finding secondary meaning.

■ The Plaintiff has produced no consumer surveys which could provide direct evidence that consumers associate the names "Spex" or "Spex, Inc." with the Plaintiff's business. Consumer's attitudes toward a trade name are the chief inquiry with respect to secondary meaning. *See, Union Carbide Corp.,* 531 F.2d at 380. "Consumer testimony and consumer surveys are the only direct evidence on this question ... [t]he other factors are relevant in a more circumstantial fashion." *International Kennel Club,* 846 F.2d at 1085. Accordingly, in this case, the Plaintiff's failure to produce consumer surveys is crippling (although not dispositive), especially when combined with the scarcity of direct consumer testimony on this issue.

A lack of circumstantial evidence in this case also weighs against a finding of secondary meaning. First, the Plaintiff has failed to show significant lengthy and exclusive use of the name, "Spex, Inc." Although the Plaintiff used that name for thirteen years before the Defendant used the term "Spex" in its trade name, there is no "fixed rule as to the length of time a symbol must be in use before it can achieve secondary meaning." *Echo Travel,* 870 F.2d at 1269, *citing, McCarthy on Trademarks,* § 15.20. More critically, the Plaintiff fails to show that it had *exclusive use* of the name "Spex." In this regard, the Seventh Circuit has explained that:

> [although] evidence of third party use is not conclusive, third party use of a substantially similar mark to promote the same goods or services to the same consumer class weighs against a finding that the consumer class associates the mark with *one* source.

*Id.* at 1269, *citing, McCarthy on Trademarks,* § 15.9.

In this case, the Plaintiff has not had exclusive use of the word, "spex" (or homonyms thereof) nationally or within the Chicago area. In fact, the Plaintiff acquired the idea to use the name, "Spex, Inc." from a picture of a Massachusetts store with the same title. A store using the word "Spex" is also located in Milwaukee. Nationally, several distributors have business names using the term "specs," which sounds the same and suggests an identical meaning to the word "spex." Moreover, a significant number of distributors and retailers selling optical frames and products available throughout the Chicago area and nationally use the word "Specs" and (more occasionally) "Spex" in their names for eyewear.

Second, as to the Plaintiff's amount and manner of advertising, "[i]t is the *effect* or *success* of the advertising, not the mere *fact* of advertising, that is the test of secondary meaning." *Id.* at 1270, *citing, McCarthy on Trademarks,* § 15.16. "A party's subjective, self-serving view of its own alleged trademark is not competent evidence upon which to base a finding of secondary meaning." *Id.* In this case, the Plaintiff did advertise in various publications including *Playboy* and *Elle* magazines. Besides the Plaintiff's reports of consumer confusion and inquiries regarding adds in *The Reader,* however, there was little evidence that this advertising had significant effect. Furthermore, as mentioned above, the fact that most of Spex, Inc.'s business comes from physician referrals suggests that evidence regarding the Plaintiff's advertising is a weak indication of consumer perceptions.

Third, because the Plaintiff has produced no evidence of amounts and volumes of sales and numbers of customers, this factor weighs against a showing of secondary meaning.

Fourth, although the Plaintiff has an established place in the market, such evidence of "secondary meaning" does not carry much weight in this case because the facts suggest that the Plaintiff has established itself in only a subset of the marketplace. The fact that the Plaintiff has advertised in *Elle* and *Playboy,* has existed for 13 years, and has four stores in the Chicago area supports a finding

that Spex, Inc. is well-established as an exclusive eyewear store. Yet, although some overlap exists between their products and customers, differences between the parties' advertising focuses and sources of business suggest (1) that they do not compete in identical market places, and (2) that Spex, Inc. has established its own, discreet segment of the marketplace. In fact, the Defendant, unlike the Plaintiff, focuses its advertising to attract consumers from the homosexual community and obtains its business directly through consumers—rather than primarily through referrals (as does Spex, Inc.).

Finally, with respect to circumstantial evidence of secondary meaning, the Plaintiff fails to meet its evidentiary burden of showing that the Defendants intentionally copied the name, "Spex, Inc." or acted in bad faith. Moreover, this court finds that the Defendant's explanation that it used the word "Spex" in "The Joy of Spex, Inc." in order to complete its parody on the book, "The Joy of Sex," is credible.

In sum, the Plaintiff fails to present sufficient direct and substantial evidence to establish that its trade name has gained secondary meaning in the marketplace. Accordingly, the "merely descriptive" trade name, "Spex, Inc." is not entitled to protection.

*Likelihood of Confusion.*

■ Even if "Spex, Inc." *were* a protectible trade name, the Plaintiff has not made a sufficient showing of likelihood of confusion to warrant trade name protection. In *Telemed Corp.,* the 7th Circuit explained that:

> [i]nasmuch as the mark for which the plaintiff sought protection is merely descriptive and also weak and inasmuch as the plaintiff did not sustain its burden of proving a strong secondary meaning, it follows that it is unlikely that confusion would result.

*Telemed Corp.,* 588 F.2d at 220.

Moreover, in determining a likelihood of confusion, the Seventh Circuit has considered the following factors to be important:

> [t]he degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of

concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and intent on the part of the alleged infringer to palm off his products as those of another.

*International Kennel Club,* 846 F.2d at 1087. "None of these factors by itself is dispositive of the likelihood of confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved." *Id.* The Seventh Circuit has also "recognized the rule that if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Id.* at 1087–88.

■ Applying these factors, neither the trade name "Spex" nor "Spex, Inc.," is so similar to "The Joy of Spex, Inc." as to cause confusion. "Spex, Inc." describes a store that sells glasses. In contrast, the name, "The Joy of Spex, Inc." is a parody on a well-known book, "The Joy of Sex." Parody strongly contributes to dispelling confusion. *Universal City Studios, Inc. v. Nintendo Co.,* 746 F.2d 112, 116 (2nd Cir.1984). Furthermore, "The Joy of Spex, Inc." most frequently uses a stylized logo incorporating a drawing of spectacles. The advertising materials of each party consistently identify that party's address and telephone number, which decreases the likelihood of confusion. *See, Greentree Laboratories, Inc. v. G.G. Bean, Inc.,* 718 F.Supp. 998, 1002 (D.Me.1989). Although the Defendant's logo separates the words, "The Joy of" from "Spex Inc." with a drawing of eyeglasses, the add as a unit is most readily understood to convey an entire parodic phrase rather than to accentuate the words, "Spex, Inc."

The products sold by "Spex, Inc." and "The Joy of Spex, Inc." are similar. Nevertheless, as explained above, these stores orient their advertising toward different markets and gain customers through different channels. Also as discussed above, the mark "Spex Inc." is a weak mark and there is no evidence that the Defendant intended to copy it.

■ Furthermore, although the Plaintiff presented some evidence of actual consumer confusion, such evidence is not strong. Even if many customers inquired about whether the stores were affiliated, evidence of occasional inquiries is superficial and trivial in the absence of evidence of actual diversion of business. *See, Telemed Corp.*, 588 F.2d at 220. In this case, the Plaintiff provided no evidence that its business was diverted when confused consumers mistakenly purchased the Defendant's products while intending to purchase those of the Plaintiff.

*Counts II and III.*

■ Because this court finds that the Plaintiff does not have a protectible trade name under the Lanham Act, the Plaintiff cannot prevail on its claims under the Deceptive Trade Practices Act or The Consumer Fraud and Deceptive Business Practices Act (Counts II and III). Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act. *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Thompson v. Spring–Green Lawn Care Corp.*, 126 Ill.App.3d 99, 104–105, 81 Ill.Dec. 202, 466 N.E.2d 1004 (1 Dist.1984).

*Count IV.*

■ The Plaintiff is not entitled to injunctive relief under Count IV for trademark dilution. "An action of dilution requires that plaintiff show his mark to be a strong mark which has acquired a widespread reputation through much effort or costly and extensive advertising and which has a distinctiveness or secondary meaning." *M–F–G Corp. v. EMRA Corp.*, 626 F.Supp. 699, 707 (N.D.Ill. 1985) (Hart, J.). As discussed above, the Plaintiff has failed to show that the name, "Spex, Inc." is a strong mark which has distinctiveness or secondary meaning.

*Count V.*

■ Count V of the Plaintiff's complaint, Theft of Business, is based upon the Plaintiff's assertion that Defendants by trade name infringement and false representations, are misappropriating business intended for Spex, Inc. in violation of the Illinois common law of unfair competition. Due to this court's finding that "Spex, Inc." is not a protectible trade name and that the Plaintiff has failed to show a likelihood of consumer confusion, the Plaintiff does not prevail on this claim.

*Count VI.*

■ Finally, the Plaintiff is not entitled to injunctive relief on its common law fraud claim. In order to establish a claim for common law fraud under Illinois law, the following elements must be established: "(1) that the defendant made a statement; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity; (5) that was relied upon by the victim to his detriment; (6) made for the purpose of inducing reliance; and (7) such that the victim's reliance led to his injury." *Buechin v. Ogden Chrysler–Plymouth, Inc.*, 159 Ill.App.3d 237, 247, 111 Ill.Dec. 35, 511 N.E.2d 1330 (2 Dist.1987). Fraud is an intentional tort, and a plaintiff must demonstrate that defendant had a specific intent to deceive or mislead and cause damage to that plaintiff through the defendant's fraudulent misrepresentations. *Branch–Hess Vending Services Employees Pension Trust v. Guebert*, 751 F.Supp. 1333, 1342 (C.D.Ill.1990). In this case, the Plaintiff fails to show that the Defendant misrepresentations were made in order to mislead either the Plaintiff or the public.

## CONCLUSION

For the reasons discussed above, this court denies injunctive relief on all counts of the Complaint and the case is dismissed.