**Daniel PESINA, Plaintiff,**

v.

**MIDWAY MANUFACTURING COMPANY, a Delaware corporation; Williams Electronics Games, Inc., a Delaware corporation; Nintendo of America, Inc., a Washington corporation; SEGA of America, Inc., a California corporation; Acclaim Entertainment, Inc., a Delaware corporation, Defendants.**

No. 94 C 5152.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 9, 1996.

---

Robert G. Riffner, Riffner, Freeman & Scott, Chtd., Schaumburg, IL, for Plaintiff.

Gerald O. Sweeney, Jr., Lord, Bissell & Brook, Chicago, IL, Steven P. Mandell, Davidson, Goldstein, Mandell & Menkes, Chicago, IL, Joseph A. Yanny, Fischbach, Perlstein, Lieberman & Yanny, Los Angeles, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Daniel Pesina, brought suit against the defendants, Midway Manufacturing Company, Williams Electronics Games, Inc. ("Midway defendants"), Nintendo of America, Inc. ("Nintendo"), Sega of America, Inc. ("Sega"), and Acclaim Entertainment, Inc. ("Acclaim") under various theories. The defendants move for summary judgment. For the following reasons, the motion is granted.

### I.

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The fact that Mr. Pesina did not respond to the summary judgment motion [1] does not change the court's inquiry, *Tobey v. Extel/JWP, Inc.,* 985 F.2d 330, 332 (7th Cir.1993), but simplifies it. I deem admitted all facts set forth in the defendants' 12M statements, because by failing to file a response, Mr. Pesina failed to controvert those facts. N.D.Ill. Local R. 12N(3).[2]

Mr. Pesina is a martial artist. The defendants are in various ways involved in the creation, manufacture, marketing, and distribution of home video games, Mortal Kombat and Mortal Kombat II, and related products. The Midway defendants created the games and hold their copyrights. There are coin-operated arcade and home versions of the games. In 1991, 1992, and 1993, Mr. Pesina was hired to model for characters of the coin-operated arcade Mortal Kombat and Mortal Kombat II. His movements were either videotaped or captured by a computer, and, after an extensive editing process, incorpo-

---

1. Mr. Pesina's response was due by September 13, 1996.

2. The Midway defendants filed a summary judgment motion and an accompanying 12M statement. Nintendo and Sega filed a separate summary judgment motion and 12M statement. Subsequently, Nintendo, Sega, and Acclaim joined the Midway defendants' motion and statement.

rated into the games. The Midway defendants licensed Acclaim to sell the coin-operated arcade games in the home video market. Acclaim created the home version of Mortal Kombat and Mortal Kombat II by reformatting the coin-operated arcade software to render it compatible with media used in the home, the process being analogous to formatting a motion picture for VCR viewing. Acclaim also adopted Mortal Kombat and Mortal Kombat II for home use on the game systems designed by Nintendo and Sega, who, in turn, manufactured the games according to Acclaim's specifications.

In his complaint, Mr. Pesina alleges that all defendants used his persona, name, and likeness without authorization in the home version of Mortal Kombat and Mortal Kombat II and the related products, thereby infringing his common law right of publicity and violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2 (1993), and Illinois Uniform Deceptive Trade Practices Act ("Deceptive Trade Practices Act"). 815 ILCS 510/2 (1993). He also alleges that the Midway defendants breached their duties of good faith and fair dealing, and seeks quantum meruit recovery from them. All defendants move for summary judgment.

## II.

The right of publicity, whose violation is alleged in Count I, is a "right to prevent others from using one's name or picture for commercial purposes without consent." [3] *Douglass v. Hustler Mag.*, 769 F.2d 1128, 1138 (7th Cir.1985). The plaintiff claiming the infringement of this right must show that, prior to the defendant's use, the plaintiff's name, likeness, or persona had commercial value. *Bi–Rite Enter.'s, Inc. v. Button Master, Inc.*, 555 F.Supp. 1188, 1198–99 (S.D.N.Y.1983) (applying, *inter alia*, Illi-

nois law). There is no evidence that Mr. Pesina's name, likeness, or persona had such value prior to the plaintiff's association with Mortal Kombat and Mortal Kombat II, and the plaintiff's expert admits as much.

Moreover, the plaintiff alleging unauthorized use of his likeness must show that the likeness was recognizable. *Leval v. Prudential Health Care Plan, Inc.*, 610 F.Supp. 279, 281 (N.D.Ill.1985). While Mr. Pesina offers nothing, the defendants present convincing evidence that the public does not recognize Mr. Pesina in the home version of Mortal Kombat and Mortal Kombat II and the related products. The video images of Mr. Pesina's movements were extensively altered prior to being incorporated into the games. Thus, after comparing Mr. Pesina and the game character, Johnny Cage, who allegedly resembles the plaintiff, only 6% of 306 Mortal Kombat users identified Mr. Pesina as the model. As to the defendants' use of Mr. Pesina's name, it appears only in Mortal Kombat, only for eight seconds, and only when a player wins the game. *See Brown v. Twentieth Century Fox Film Corp.*, 799 F.Supp. 166, 172 (D.C.Cir.1992), *aff'd*, 15 F.3d 1159 (D.C.Cir.1994) (single unauthorized use of name does not constitute right of publicity claim). Only one respondent actually knew that Mr. Pesina modeled for Johnny Cage.

Mr. Pesina could argue that he became so associated with Johnny Cage that the character invokes Mr. Pesina's identity. Thus, his right to publicity would be invaded by the defendants' use of Johnny Cage. *McFarland v. Miller*, 14 F.3d 912, 918–23 (3rd Cir.1994). To prevail on this theory, however, Mr. Pesina would have to show that his identity became "inextricably intertwined" in the public mind with Johnny Cage. *See id.* at 921. This Mr. Pesina cannot do since the evidence shows that Mr. Pesina is not a widely known martial artist and the public does not even recognize him as a model for

---

**3.** The defendants insist that this common law claim is preempted by Section 301(a) of the Copyright Act. 17 U.S.C. § 301. This Circuit has suggested that if an employee has contractually limited the media in which his performance may be shown by the employer, should the employer exceed this authority, the employee's right

of publicity claim is not preempted. *Baltimore Orioles v. Major League Baseball Players*, 805 F.2d 663, 679 n. 29 (7th Cir.1986). Given the ambiguous text of the release forms Mr. Pesina signed, I will assume, *arguendo*, that his right of publicity claim is not preempted.

Johnny Cage. *See supra; see also DeClemente v. Columbia Pictures Indus., Inc.*, 860 F.Supp. 30, 52–53 (E.D.N.Y.1994) (no right of publicity claim where "no reasonable jury can find on the evidence presented[ ] that [the plaintiff's] ... public personality as 'The Karate Kid' was so notorious to the public that it 'had [be]come closely and widely identified with the person who bears . it' "). Therefore, since no genuine issue of material fact exists that the defendants infringed Mr. Pesina's right of publicity, I grant summary judgment on Count I.

In Counts II, III, and IV, Mr. Pesina alleges that the defendants' unauthorized use of his likeness, name, and persona caused confusion in the marketplace or a misunderstanding as to the source, sponsorship, approval, or certification of goods and services.

For the purposes of the Lanham Act, Mr. Pesina alleges a so-called false endorsement claim. "A false endorsement claim based on the unauthorized use of a celebrity's identity ... alleges the misuse of a trademark, : ... such as visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir.1992).

Thus, Mr. Pesina must demonstrate that he was a "celebrity" when the defendants used his persona, name, and likeness; otherwise, his identity does not constitute an economic interest protectable under the Lanham Act. *See id.* He must also demonstrate consumer confusion. Mr. Pesina's own expert conceded that the plaintiff's identity as a martial artist had no celebrity status or public recognition, and therefore lacked commercial value, prior to the plaintiff's association with Mortal Kombat and Mortal Kombat II. The defendants present convincing evidence, to which Mr. Pesina has not responded, that consumer confusion is highly unlikely because the public does not even recognize Mr. Pesina as a model for the home Mortal.Kombat and Mortal Kombat II characters. *See supra.* Since no genuine issue of material fact exists with respect to the violation of the Lanham Act, summary judgment is appropriate on Count II. *Cf. DeClemente*, 860 F.Supp. at 45–46 (plaintiff not entitled to Lanham Act protection, where "no evidence has been adduced that would allow a reasonable juror to find that in the mind of the public, even the consumer public in karate, when a consumer is presented with the term 'The Karate Kid,' he or she would know the source to be the plaintiff").

Mr. Pesina's factual allegations under the Consumer Fraud Act and the Deceptive Trade Practices Act, Counts III and IV, are identical to those under the Lanham Act. The legal inquiry is the same under the Illinois and the Lanham Acts. *See Rock–A–Bye Baby, Inc. v. Dex Products, Inc.*, 867 F.Supp. 703, 713–14 (N.D.Ill.1994); *Spex, Inc. v. The Joy of Spex, Inc.*, 847 F.Supp. 567, 579 (N.D.Ill.1994). Accordingly, I grant summary judgment on Counts III and IV.

I grant summary judgment on Count V, which alleges that the Midway defendants breached their duties of good faith and fair dealing, because "the duty of good faith and fair dealing which the law implies [in every contract] does not create an independent cause of action." *Powers v. Delnor Hosp.*, 135 Ill.App.3d 317, 481 N.E.2d 968, 972, 90 Ill.Dec. 168, 172 (1985).

Finally, in Count VI, Mr. Pesina's quantum meruit claim, the plaintiff essentially complains that when he signed the contracts to model for characters of the coin-operated arcade version of Mortal Kombat and Mortal Kombat II, he agreed to inadequate compensation, since the characters went on to appear in the home version of the games. Under Illinois law, however, quantum meruit relief is not available "when a contract exists between the parties concerning the identical subject matter upon which the quasi-contractual claim rests." *P–K Tool & Mfg. Co. v. General Elec. Co.*, 612 F.Supp. 276, 278 (N.D.Ill.1985). Therefore, I grant summary judgment on Count VI.

### Conclusion

For the reasons stated above, the defendants' motion for summary judgment is granted.