### Carolyn CONDIT, Plaintiff,

v.

### STAR EDITORIAL, INC. and American Media, Inc., Defendants.

#### No. CIV F 02–6004 OWW LJ.

United States District Court, E.D. California.

April 15, 2003.

Brian Anthony Rishwain, Johnson and Rishwain LLP, Los Angeles, CA, for plaintiff.

Bruce Alan Owdom, Dietrich Glasrud Mallek and Aune, Fresno, CA, Adam Lindquist Scoville, pro hac vice, Thomas B Kelley, pro hac vice, Steven D Zansberg, pro hac vice, Christopher P Beall, pro hac vice, Steven D Zansburg, pro hac vice, Faegre & Benson, Denver, CO, Michael B Kahane, pro hac vice, American Media Inc., Legal Affairs Department, Boca Raton, FL, for defendants.

## MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FOURTH CAUSE OF ACTION (Lanham Act Claim) PURSUANT TO FED.R.CIV.P. 12(b)(1) AND 12(b)(6)

WANGER, District Judge.

### I. *INTRODUCTION*

In this diversity action, Defendants move to dismiss for lack of standing and failure to state a claim, Carolyn Condit's ("Plaintiff") fourth claim for violation of Section 43(a) of the Lanham Act [15 U.S.C. § 1125(A)], against STAR EDITORIAL, INC. and AMERICAN MEDIA, INC. ("Defendants"), arising from statements printed in the September 11, 2001, issue of Defendants' publication, *The Star. See* Doc.1, Complaint, filed August 16, 2002.

### II. *BACKGROUND*

The September 11, 2001 issue of *The Star,* published a cover-page story entitled

"CONDIT WIFE'S AGONY," which expressly represented that the story about Plaintiff was "HER OWN STORY." *See* Doc. 1, Exhibit 1. Below the cover's headline, bullet points state: "She trashes home and destroys their family photos;" "Her suicide threat over Chandra;" and "How he brainwashed her for 34 years." Plaintiff alleges she was not interviewed by *The Star* nor did she authorize it to represent that she was interviewed. Plaintiff complains that the combination of the photograph, the text "HER OWN STORY," along with the headline and sub-headlines falsely suggest that Plaintiff was telling her personal story to *The Star* about the turmoil she experienced in connection with the Chandra Levy disappearance and subsequent investigation. Plaintiff argues the manner in which the article is written and presented, falsely suggests to readers that Plaintiff told the story.[1]

Plaintiff seeks general and punitive damages of at least $15,000,000, a percentage of Defendants' profits, treble damages,

---

1. Inside the magazine on page 4, the article headline includes "Agony of Condit's wife," with the subheading of "She Picked Up Their Family Photo & Smashed It To The Floor..."

 On page 5, the caption states: "SHATTERED DREAMS Sources say Condit's cheating drove his wife Carolyn to smash family photos and wreck their Ceres, Calif., house (above) in a vicious screaming match with him."

 Pages 4 through 5, report the following statements:
 Congressman Gary Condit's shameful lies, kinky affairs and illicit romance with Washington intern Chandra Levy have caused his devoted wife of 34 years to suffer an emotional breakdown and threaten suicide, say insiders.
 An in-depth *Star* investigation reveals that, according to sources, long suffering Carolyn Condit:
 • Threatened to kill herself after she learned the heartbreaking truth about his relationship with Chandra Levy.
 • Went berserk and trashed the family house two weeks before his TV interview with Connie Chung.
 • "Has sought counseling because of her husband's serial philandering."
 "Once an active, friendly, athletic woman, she has lost 20 pounds and has taken to hiding from friends and family as she watches her marriage collapse."
 "Carolyn considered taking her own life—more than once—to escape it all."
 "The friend reveals that Condit just stood there 'in stunned silence' as an outraged Carolyn went berserk, smashing family photos, knocking over furniture and shattering cases and plates."
 "Finally she picked up a picture of Condit, her and the kids and raised it over her head."
 "And with that, she smashed the picture to the floor and collapsed into a sobbing heap."
 "There was a mess afterward, insiders reveal, that Condit had to call staff people from his California office to come over and help clean it up."
 "She believed that Condit had found the next Mrs. Condit, so she risked her health by flying to Washington, D.C. to see him. Her agonizing migraines can be triggered by changes in air pressure on airliners, but she was determined to confront her spouse."
 "Carolyn told Gary: 'If you leave me for Chandra, I'll kill myself—and I'll make sure everyone knows why!'
 "Years ago, dedicated, committed wife Carolyn told a close friend: 'If Gary ever left me, I would kill myself. I love him. I couldn't live without him.' '
 "She was matter-of-fact, dead serious," said the pal.
 On page 17, an accompanying story contains the caption:
 "WHY TORMENTED CAROLYN STOOD BY HER MAN,"
 and the following statements:
 "It got so bad that Carolyn considered going to a shelter for abused women, say insiders. 'Over the years, Gary has completely destroyed Carolyn's self-confidence,' says another friend". "She told one woman she wanted to go to the local Woman's Crisis Center, where abused wives get free counseling, but felt it would betray her husband. If word got out, it could damage his reputation,' she said."

an apology and retraction, and attorneys' fees and costs.

## III. *LEGAL STANDARD*

### A. *Motion to Dismiss—F.R.C.P. 12(b)(6)*

A complaint "should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002) (citations omitted); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). In deciding a motion to dismiss, the court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir.2002).

Allegations that contradict facts which may be judicially noticed need not be accepted as true. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir.1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986), while conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981);

*see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.") (*Branch* overruled on unrelated grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002)). Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987).

## IV. *ANALYSIS*

The complaint does not specify whether relief is sought under Section 43 for false advertising or false association. Defendants argue that Plaintiff cannot, as a matter of law, plead that she has suffered a commercial or competitive injury that is the type of unfair competition proscribed by the Lanham Act. Plaintiff rejoins she is entitled to maintain a false association claim to redress commercial exploitation of her persona to sell magazines through publication of a false and fabricated story. She argues that for Lanham Act purposes, there is sufficient likelihood of consumer confusion to support a false association claim, which raises a factual issue, not resolvable by a motion to dismiss. Defendants disagree.

 A Lanham Act[2] claim requires: (1) false or deceptive advertisements and representations to customers; (2) which advertisements and representations actually

---

"But a desperate Carolyn couldn't keep quiet forever. She later confided in a handyman who worked at their house that she felt abused by her husband."

" 'She told the worker about "Gary's cheating", that she felt lonely and cut off,' the friend added." "She didn't tell her friends because she didn't want to worry them. So she told a sympathetic stranger. That's so bad."

2. The text of Section 43(a) provides as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -

deceive a significant portion of the consuming public; and (3) injury caused by such conduct. *See William H. Morris v. Group W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995). The injury must be "competitive," i.e., harm to plaintiff's ability to compete with the defendant. *Barrus v. Sylvania*, 55 F.3d 468, 469–70 (9th Cir.1995). There is no claim Plaintiff commercially competes with *The Star.*

■ The statute encompasses both false association and false advertising claims. *See id.* at 1108. Plaintiff's Opposition clarifies she only seeks Lanham Act relief for false association. *See* Doc. 22, p. 2 line 1, filed November 27, 2002. Defendants correctly argue a false association claim requires injury to commercial interests; without such injury, there is no standing. *See Morris v. Group*, at 1109 (§ 43(a) extends to parties with a commercial interest in a product wrongfully identified with another's mark or with a commercial interest in the misused mark). Defendants argue Plaintiff's absence of injury to any "commercial interests" defeats her false association claim. *See Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1109–1110 (9th Cir.1992). Whether an existing commercial interest is an essential element of a false association Lanham Act claim is not dispositively treated in cases interpreting the statute or its legislative history.

The text of Section 43(a)(1) explicitly refers to goods, services, or commercial

 A. is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

 B. in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is

activities. Senate Report No. 100–515 discusses the intended scope of the Lanham Act. *See* P.L. 100–667, §§ 31–33. "As written, the remedy sections of the Lanham Act ... do not specifically extend to violations of section 43(a) of the Act that do not involve a registered mark. However, with the expansion of Section 43(a) to cover types of unfair competition that were not envisioned when the Lanham Act was enacted in 1946, the courts, with increased frequency, are disregarding this limitation." *See id.* For example, the Second, Sixth, Eighth, Ninth and Eleventh Circuits have extended the application of the Lanham Act beyond covering registered marks. *See id.* "Because Section 43(a) of the Act fills an important gap in federal unfair competition law, the committee expects the courts to continue to interpret the section." *See id.* at § 35. Amendments to the Act make clear "...the section applies only to acts or practices which occur in [or] affect commerce." *See id.* "The committee ... leaves to the courts, the task of further developing and applying this principle under section 43(a)." *See id.* Further, "standing ... should continue to be decided on a case-by-case basis, and that the amendments it made to the legislation with respect to [this issue] should not be regarded as either limiting or extending applicable decisional law." *See id.*[3]

likely to be damaged by such act. 15 U.S.C. § 1125(a).

**3.** [T]he legislation amends the remedies sections of the Lanham Act to provide that injunctive relief, profits, damages and costs, as well as destruction orders, do not require ownership of a registration. (§§ 31–33).

 · · · ·

Section 43(a) of the Act (15 U.S.C. 1125(a)) appears to deal only with false descriptions or representations and false designations of geographic origin [of goods, services, or commercial activities as specified in § 43(a)(A)(1)(A)].

Case law has not recognized the extension of Section 43(a) Plaintiff seeks, to protect individual non-commercial image or identity. In *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, the Seventh Circuit found uncertain the extent to which the Lanham Act reaches beyond business competitors. (871 F.2d 697, 699–700 (1989)). The Second Circuit in *Colligan v. Activities Club of New York, Ltd.*, held that Section 43(a) standing is limited to commercial parties. (442 F.2d 686, 692 (2nd Cir.1971)). In cases involving commercial parties, "actual competition" has not been required for Section 43(a) relief. *See Barrus v. Sylvania*, 55 F.3d 468, 469 (9th Cir.1995)(citing *Waits v. Frito-Lay, Inc.* 978 F.2d 1093, 1110 (9th Cir.1992)); *see also PPX Enterprises, Inc. v, Audiofidelity, Inc.*, 746 F.2d 120, 125 (2nd Cir. 1984). A commercial party must possess a "commercial interest to be protected" under the Lanham Act. *See Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2nd Cir.1980). Here, Plaintiff is not a "commercial party," as she does not provide goods or services nor does she allege she engages in any commercial activity.

The Ninth Circuit agrees that § 43(a) standing "turns on whether the party 'has a reasonable interest to be protected against.'" *See Smith v. Montoro*, 648 F.2d 602, 608 (9th Cir.1981). *Dovenmuehle* rejected the contention that use of a family name threatened or caused damages in commerce because: (1) none of the plaintiffs were engaged in competition, even indirectly; and (2) no plaintiff had any intention to operate a commercial activity under the family name. *See Dovenmuehle, supra* at 700; *see also Symantec Corp. v. DC Micro, Inc. et al.*, 2002 WL 31112178 *5 (D.Or.2002). *Pesina v. Midway Mfg. Co.* suggests that the claimant must have an economic interest in commercialization of her name and likeness "in the manner of a trademark." (948 F.Supp. 40, 43 (N.D.Ill.1996)). Otherwise, the individual lacks standing to bring a Lanham Act false association claim. *See id.* A plaintiff must have a present commercial interest in image or identity, not speculative possibility of future commercial value. "[M]ere potential of commercial interest ... is insufficient to confer standing for [a] false association claim."[4] "Thus, [Plaintiff] must demonstrate that [s]he was a 'celebrity' when [D]efendants used [her] persona, name and likeness; otherwise, [her] identity does not constitute an economic interest protectable under the Lanham Act." *Pesina*, 948 F.Supp. at 43.

Since its enactment in 1946, however, it has been widely interpreted as creating, in essence, a federal law of unfair competition. For example, it has been applied to cases involving the infringement of unregistered marks, violations of trade dress and certain nonfunctional configurations of goods and actionable false advertising claims.

. . . . .

The committee focused a great deal of attention on the revised language of Section 43(a) of the Act and made four amendments to it. The first added a reference to "make clear that the section applied only to acts or practices which occur in [or] affect commerce." (§ 35) (P.L. 100–667); *see H.B. Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir.1987)("*Halicki* relies on the trend to expand the Lanham Act.... The final section of the Lanham Act—in a passage unusual, and extraordinarily helpful, in declaring in so many words the intent of Congress—states that 'the intent of this chapter is to regulate commerce within the control of Congress... to protect persons engaged in such commerce against unfair competition.' To be actionable, conduct must not only be unfair but must in some discernible way be competitive").

4. *See Hutchinson v. Pfeil*, 211 F.3d 515, 521 (10th Cir.2000)(citing *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867, 873 (10th Cir.1995))("Although plaintiff asserts that he has plans to... use his name in a trademark, the mere potential of commercial interests... is insufficient to confer standing").

The commercial interest principle has its origins in the historic requirement of trademark law that the mark must be in commercial use before the trademark can be registered. *See* P.L. 100–667. The Trademark Law Revision Act of 1988 amended the Lanham Act to permit a registration application for a trademark by persons who have a bona fide *intention to use a trademark in commerce. See id.* (emphasis added). There has not been extensive judicial interpretation of the amendments to § 1125.[5]

A majority of circuits require a commercial interest in a mark, that is, at minimum, a present intent to commercialize a mark. Since the Lanham Act permits protection of a mark adopted with commercial "intent to use," not only after "actual use," and the legislature "...expects the courts to interpret the section" as trademark law evolves; a claimant must at the least allege an existing intent to commercialize an interest in identity to have standing for a Lanham Act false association claim.

Plaintiff's complaint does not allege: (1) a present intent to use her identity for commercial purposes; (2) any past or existing commercial use of her image and identity, or that it has commercial value; or (3) that she competes commercially in the use of her persona; and (4) has suffered commercial injury to such an interest in her image and identity. *See* Complaint, ¶¶ 41–49. To the contrary, Plaintiff describes herself as a "private figure" who has suffered emotional distress injuries, without reference to any commercial celebrity status. She has no present or prospective business activities or manifested intent to commercially exploit her identity. *See* Complaint, ¶¶ 2, 46. Plaintiff does not allege a "reasonable interest" that requires protection against under the Lanham Act. *See Smith,* 648 F.2d at 608. "[T]o hold that [Plaintiff's] interests [as presently described] are also embraced by the Lanham Act would be to expand the scope of that Act beyond anything its drafters intended." *See Cromer, supra,* internal fn. 5.

Plaintiff rejoins that whether she is a "public" or "private" figure, or whether the damage she suffered is "commercial" or "non-commercial," does not matter. *See* Opposition, p. 2, lines 24–25. She claims a right not to have her name and likeness falsely associated with *The Star,* if commercial gain results, or the false impression is created that she has cooperated with or endorsed *The Star's* false portrayal of her. Plaintiff insists that Section 43(a) of the Lanham Act is broadly remedial in nature, and must be interpreted and applied to provide a remedy against any wrongful false association or misappropriation of her image or identity for commercial gain. *(Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 79 (2nd Cir.1981)). Plaintiff's effort to expand the Lanhem Act is premised on the *Eastwood I* [6] *and East-*

---

5. *See Cromer v. Lounsbury Chiropractic Offices, Inc.,* 866 F.Supp. 960, 963–964 (S.D.W.Va.1994)("The interests the plaintiffs seek to protect in this case are not commercial interests.... [N]or do they have any business interests which they claim have been damaged by the defendants' tortious acts. Damages claimed by the plaintiffs are purely personal—no commercial interests whatsoever are involved. This is not to say that the interests of plaintiffs at stake here are not substantial. Those interests simply lie beyond the scope of the Lanham Act.... [State case law] clearly hold[s] that the appropriation of a person's name or likeness is actionable as a tort. (Citations omitted). For this court to hold that such interests are also embraced by the Lanham Act would be to expand the scope of that Act beyond anything its drafters intended. Such an expansion, which would supplement or supplant state law with overlapping federal causes of action can be legitimately accomplished only through the legislative process").

6. *Eastwood v. Superior Court,* 149 Cal.App.3d 409, 418, 198 Cal.Rptr. 342 (1983).

*wood II*[7] cases, that considered a false association claim arising from the sensationalist exploitation of a movie star's persona to sell magazines. *Eastwood I & II* are distinguishable.

Clint Eastwood, a famous actor, sued in *Eastwood I* in state court to redress unauthorized commercial appropriation of his identity, under both the common law and California Civil Code § 3344(a). Eastwood is in the business of commercially exploiting his image, identity, and services as a professional entertainer. He complained of commercial injury from lost revenue and harm to his commercial identity caused by the tabloid's presentation of a "calculated falsehood." (149 Cal.App.3d at 423, 198 Cal.Rptr. 342). Section 3344 protects personal identity from misappropriation whether or not the claimant's identity has commercial value. By contrast, here, Plaintiff sues for false association under a federal statute designed to protect commercial intellectual property interests, which has consistently been interpreted to require commercial injury or prior commercialization of private identity. *Eastwood I* provides no guidance.

*Eastwood II* was brought in federal court under the false association prong of Section 43(a) of the Lanham Act, for alleged commercial injury. (123 F.3d at 1250). The tabloid advertised its "Exclusive Interview" with Clint Eastwood, which was a complete fabrication, written in a way to suggest an actual interview had occurred when none was conducted. *See id.* *Eastwood II* does not hold that a Lanham Act claim is maintainable without commercial injury. Neither *Eastwood* case addresses Lanham Act standing for non-commercial injury or authorizes such a claim for an individual who does not commercialize her image and identity. Absent factual foundation she suffered commercial injury or at the time of the publications

had the requisite bona fide actualized intent to commercialize her persona, Plaintiff cannot state a Lanham Act false association claim.

Plaintiff offers a fall-back argument that the publication creates a sufficient "likelihood of consumer confusion" to be actionable, and because confusion is a question of fact, the issue cannot be resolved by a motion to dismiss (*Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1008 (9th Cir. 2001)), without a fully developed factual record. *See Clicks Billiards Inc. v. Six-shooters Inc.,* 251 F.3d 1252, 1265 (9th Cir.2001). This argument ignores that absent a cognizable Lanham Act claim, no need arises to make a factual determination as to likelihood of consumer confusion.

Defendants observe their use of Plaintiff's name and likeness was not in connection with advertising or promotion. The text of Section 43(a) makes a false representation actionable when made "in commercial advertising or promotion." *Coastal Abstract Serv., Inc. v. First American Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir.1999) (a communication constitutes "advertising or promotion" under Section 43(a) only if it can be characterized as "commercial speech"). In the Ninth Circuit, a news report including the publication of a person's trademark is not commercial speech, nor does it constitute a use in connection with commercial advertising or promotion under Section 43(a). *See Hoffman v. Capital Cities/ABC, Inc.,* 255 F.3d 1180, 1186 (9th Cir.2001); *New Kids on the Block v. News America Publ'g, Inc.,* 971 F.2d 302, 306–08 (9th Cir.1992).

The allegedly false representations about Plaintiff were published in *The Star's* "news report," not in any business advertising or commercial format. Even if the story was prominently displayed on

---

**7.** *Eastwood v. National Enquirer, Inc.,* 123 F.3d 1249, 1250 (9th Cir.1997).

the cover page and that unauthorized use of Plaintiff's image and identity could have the incidental effect to help sell Defendants' publication, such a use of the identity of a claimed non-commercial, private figure is not Lanham Act commercial advertising or promotion.

Defendants contend Plaintiff's false association claim fails because her persona has no trademark value, citing *Waits*, 978 F.2d at 1110, which holds that Section 43 only protects a person whose name or likeness is "akin to ... a trademark." A prerequisite to Plaintiff's claim is that her identity have commercial value at the time of the disputed publication. *See White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1400 (9th Cir.1992). Plaintiff makes no such allegation and insists she is a "private," not a public figure, to avoid the enhanced burden of proving malice, for her defamation claim. Absent allegations that Plaintiff's persona has commercial value akin to a trademark or that she intended to use her identity to create such value at the time of the publications, Plaintiff cannot state a Lanham Act non-commercial, false association claim.

 Congress has not evinced intent to create a federal "false light" tort claim for misappropriation of image or identity, absent commercialization. By contrast, common law and state statutes, like California's appropriation of identity law, do not require commercial value in one's image and identity. *See* Cal. Civ.Code § 3344.[8] Under California law, protection against identity misappropriation extends beyond celebrity plaintiffs to persons whose identity has no commercial value.[9] The common law and state laws afford adequate protection for the false light tort or for misappropriation of non-commercial image or identity. Congress knows how to enact a statute to afford protection for non-commercial false association. It has not done so. Plaintiff attempts to extend the Lanham Act beyond the remedies Congress intended it to provide. Only Congress, not a federal trial court, can legislate to provide the remedy Plaintiff seeks.

## V. CONCLUSION

Defendants' motion to dismiss Plaintiff's fourth claim for false association under the Lanham Act is GRANTED WITH LEAVE TO AMEND, if Plaintiff can allege the requisite commercial interest in her identity within the strictures of Rule 11. If Plaintiff has not amended the complaint within twenty (20) days following date of service of this order, the Fourth Claim is DISMISSED WITH PREJUDICE.

Within five (5) days following the date of service of this decision, Defendants shall

---

8. (a) Any person who knowingly uses another's name ..., or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent,... shall be liable for any damages sustained by the person or persons injured as a result thereof. (Cal. Civ.Code § 3344).

9. *See KNB Enterprises v. Matthews*, 78 Cal. App.4th 362, 367, 92 Cal.Rptr.2d 713 (2000)("Section 3344 provides for minimum damages of $750, even if no actual damages

are proven. In discussing a similar Nevada statute, the Nevada Supreme Court noted that the legislative purpose for providing a minimum recovery for non-celebrities is 'to discourage such appropriation' *Hetter v. Eighth Judicial District Court*, 110 Nev. 513, 519, 874 P.2d 762, 765 (1994)"); *see also Baugh v. CBS, Inc.*, 828 F.Supp. 745, 753 (N.D.Cal.1993)(explaining that misappropriation occurs when "appropriation of the name and likeness brings injury to the feelings, that concern's one's own peace of mind, and that is mental and subjective." (internal citations omitted)).

lodge a proposed order in conformity with this decision.

SO ORDERED.