Taki **KASTANIS** and **Kpokos, Inc.,** an Illinois corporation d/b/a/ **Yolk Café, Plaintiffs,**

v.

**EGGSTACY LLC,** and Illinois limited liability company, and **New Yolk New Yolk LLC,** an Illinois limited liability company, **Defendants.**

No. 10 C 3561.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 20, 2010.

Nicholas V. Dizonno, Belongia, Shapiro & Franklin, LLP, Chicago, IL, Edward E. Campbell, Serpe, Dizonno & Associates, LTD., Itasca, IL, for Plaintiffs.

Michael James Mullen, Amy E. Collins, Kralovec & Marquard, Chartered, Hector Ledesma, John J. Piegore, Sanchez & Daniels, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

JEFFREY T. GILBERT, United States Magistrate Judge.

This matter is before the Court on Plaintiffs' motion for preliminary injunction [Dkt. # 4].[1] For the reasons set forth below, the motion for preliminary injunction is denied.

## BACKGROUND

Plaintiffs Taki Kastanis and Kpokos Inc. own three restaurants that operate under the name Yolk in and around downtown Chicago, Illinois.[2] Kastanis opened his first Yolk in November 2006. Transcript of 9/15/10 Preliminary Injunction Hearing at 58 (hereinafter referred to as "Hearing Tr."). All three restaurants serve breakfast and lunch. On March 22, 2007, Kastanis registered the word "yolk" with the United States Patent and Trademark Office ("USPTO"), Reg. No. 3,347,771, Serial No. 77137603. Pls.' Motion [Dkt. # 4], Group Ex. A. Kastanis also registered the "yolk" word design utilized by Yolk with the USPTO, Reg. No. 3,347,784, Serial No. 77137839. *Id.*

Eggstacy is a restaurant located in Oakbrook, Illinois that also serves breakfast and lunch. Hearing Tr. at 11. Defendants also operate an Eggstacy restaurant in Woodridge, Illinois. *Id.* Defendants Eggstacy LLC ("Eggstacy") and New Yolk New Yolk LLC ("New Yolk New Yolk") opened the restaurant New Yolk New Yolk in Hinsdale, Illinois on March 31, 2010. Defs.' Resp. [Dkt. # 26], at 1.

---

1. In accordance with the provisions of 28 U.S.C. § 636(c), the parties executed a Limited Consent to Exercise of Jurisdiction by a United States Magistrate Judge on July 9, 2010, in which the parties voluntarily consented to have this Court exercise the court's jurisdiction to conduct all proceedings, including entry of final judgment, as to Plaintiffs' motion for a preliminary injunction.

2. Kastanis testified at the hearing that Yolk currently has three locations open in and around downtown Chicago and that Plaintiffs' have started construction on a fourth location in downtown Chicago. Hearing Tr. at 72.

According to Defendants, New Yolk New Yolk is a New York-themed restaurant that serves breakfast and lunch and includes in its menu many of the same dishes that Eggstacy has on its menu. *Id.;* Hearing Tr. at 21, 24, 48.

Plaintiffs have sued defendants Eggstacy and New Yolk New Yolk for trademark infringement, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). They also have asserted parallel state law claims for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1. Plaintiffs argue that Defendants' use of the name New Yolk New Yolk for their restaurant infringes on Plaintiffs' trademark Yolk. Plaintiffs filed a motion for preliminary injunction seeking to bar Defendants from operating their restaurant under the name New Yolk New Yolk. The parties have submitted extensive briefing on the preliminary injunction motion, and the Court conducted a hearing on September 15, 2010 at which Taki Kastanis, owner of Yolk, and Peter Verros, owner of New Yolk New Yolk and Eggstacy, testified. This matter is ripe for decision.

## ANALYSIS

■ A party seeking a preliminary injunction must demonstrate that: (1) it has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Girl Scouts of Manitou Council Inc. v. Girl Scouts of the United States of America Inc.,* 549 F.3d 1079, 1085 (7th Cir.2008). In order to succeed on a motion for preliminary injunction, the movant must show that it has a "better than negligible" chance of success on the merits.[3] *Id.* at 1096 (citing *Ty Inc. v. Jones Group Inc.,* 237 F.3d 891, 897 (7th Cir.2001)). If the moving party satisfies these three elements, the court then must consider any irreparable harm an injunction would cause the nonmoving party and any consequences to the public from denying or granting the injunction. *Promatek Indus. v. Equitrac Corp.,* 300 F.3d 808, 811 (7th Cir.2002) (citing *Ty,* 237 F.3d at 895). These considerations are weighed applying a "sliding scale approach" in which "the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor." *Ty,* 237 F.3d at 895–896.

## I. Plaintiffs' Likelihood of Success on the Merits

The Lanham Act provides, in relevant part, that a plaintiff may bring a civil action against:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods,

---

**3.** The Seventh Circuit has utilized more than one standard for determining a plaintiff's likelihood of success on the merits in the context of a motion for preliminary injunction. *See* Magistrate Judge Morton Denlow, *The Motion for a Preliminary Injunction: Time for a Uniform Federal Standard,* 22 Rev. Litig. 495, 531 (2003). The Seventh Circuit has required a "likelihood of success on the merits" in *Eli Lilly & Co. v. Natural Answers Inc.,* 233 F.3d 456, 461 (7th Cir.2000) and, in *Barbecue Marx Inc. v. 551 Ogden Inc.,* 235 F.3d 1041 (7th Cir.2000), the Seventh Circuit required that a plaintiff show a "greater than negligible chance of prevailing on the merits of the underlying infringement claim." 235 F.3d at 1043. In this case, the Court applies the less demanding standard of *Barbecue Marx.*

services, or commercial activity by another person.

15 U.S.C. 1125(a). In order to succeed on a trademark infringement claim, Plaintiffs must demonstrate that: (1) the Yolk marks are protectable; (2) Defendants have used the marks in commerce; and (3) their use of the term is likely to cause confusion. *Ty,* 237 F.3d at 897.

## A. Whether The Yolk Marks Are Protectable

■ In order to determine whether Defendants have violated the Lanham Act, the Court must first determine whether the word "yolk" is a protectable trademark. The law classifies trademarks into five categories of increasing distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 638 (7th Cir.2001).

■ In general, the level of trademark protection corresponds to the distinctiveness of the mark. *Id.* A generic term is one that is commonly used and does not identify any particular source. *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir.1986). A generic term is not entitled to any trademark protection. *Id.* A descriptive mark is one that "describes the ingredients, qualities, or characteristics of an article of trade or a service" and, generally, it is not protected as a trademark because a merely descriptive mark is a " 'poor means of distinguishing one source of services from another.' " *Id.* (quoting *M.B.H. Enters. v. WOKY, Inc.,* 633 F.2d 50, 54 (7th Cir. 1980)). A descriptive mark may receive trademark protection, however, if it acquires secondary meaning "in the collective consciousness of the relevant community." *Mil–Mar Shoe Co. Inc. v. Shonac Corp.,* 75 F.3d 1153, 1157 (7th Cir.1996) (citing *Gimix, Inc. v. JS & A Group, Inc.,*

699 F.2d 901, 907 (7th Cir.1983)). Finally, terms that are either suggestive, arbitrary, or fanciful automatically are entitled to trademark protection because they are inherently distinctive. *Two Pesos,* 505 U.S. at 767–68, 112 S.Ct. 2753.

■ It is not disputed that Plaintiffs registered the name Yolk with the USPTO without proof of secondary meaning. Pls.' Motion [Dkt. # 4], Group Ex. A. Registration of a trademark without qualification or proof of secondary meaning creates the presumption that the mark is valid and therefore entitled to protection. *Chattanoga Mfg. Inc. v. Nike Inc.,* 140 F.Supp.2d 917, 923 (N.D.Ill.2001) (holding that "registration of the mark 'without proof of secondary meaning' creates the presumption that the mark is more than merely descriptive"); *see also* 15 U.S.C. § 1057(b).

■ Notwithstanding Plaintiffs' registration of their trademark, Defendants argue that the word "yolk" is generic and thus is unprotectable under the Lanham Act. The Court can consider several factors when determining whether a mark is generic, including the plaintiff's use, the competitor's use, dictionary definitions, media usage, testimony of persons in the trade, and consumer surveys. 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition § 12:13* (4th ed. 2006).

■ A generic term is one that "serve[s] to denominate a type, a kind, a genus or a subcategory of goods." *Henri's Food Products Co., Inc. v. Tasty Snacks, Inc.,* 817 F.2d 1303, 1305–06 (7th Cir.1987). In other words, a generic mark merely specifies the type or genus of the goods or services being sold. *Id.* Thus, the relevant inquiry is: (1) what genus of services is at issue; and (2) whether the relevant public uses that term primarily to refer to that genus of service. *See Lettuce Entertain*

*You Enterprises Inc. v. Leila Sophia AR LLC,* 703 F.Supp.2d 777, 784 (N.D.Ill. 2010). Plaintiffs are using the trademarked term "Yolk" as the name for their restaurants. Although Plaintiffs' restaurants sell dishes in which eggs and egg yolks are used as ingredients, they do not sell eggs or yolks in isolation. The genus of services provided by Plaintiffs is not selling eggs or yolks but rather providing restaurant services, and it is not disputed that Plaintiffs' Yolk marks are registered for restaurant services. Pls.' Motion [Dkt. # 4], Group Ex. A. Therefore, the relevant inquiry is whether the word "yolk" is a generic term for the kind of breakfast-themed restaurant services offered by Plaintiffs.

■ Plaintiffs argue that the general public associates the word "yolk" with eggs, specifically the middle of an egg and not restaurant services. Pls.' Memorandum [Dkt. # 11], at 4. We agree. The word "yolk" is a generic term for the yellow center of an egg. Indeed, both parties provide similar dictionary cites for the definition of "yolk" as the yellow substance of an egg that is surrounded by a white substance. *See* Defs.' Resp. [Dkt. # 26], Ex. D.; Pls.' Reply [Dkt. # 30], Ex. A. Yolk, however, does not sell yolks or eggs exclusively or in isolation. Rather, Yolk is a restaurant that serves breakfast and lunch, including many specialty egg-based dishes. Pls.' Motion [Dkt. # 4], at 3. The word "yolk" is not a generic term for a restaurant serving breakfast food and egg based dishes. Therefore, the Court concludes that Plaintiffs have a greater than negligible chance of establishing that the word "yolk" is not a generic term in this case,[4]

■ The more relevant inquiry is whether the word "yolk" is descriptive or suggestive. A term is considered descriptive if it immediately conveys to purchasers information as to the ingredients, quality, characteristics, functions or other features of the product. *Henri's Food Products Co. Inc. v. Tasty Snacks Inc.,* 817 F.2d 1303, 1306 (7th Cir.1987). The qualifier "immediately" in the definition of a "descriptive" term is important. By contrast, the distinguishing characteristic of a protectable suggestive term is that it requires some operation of the imagination on the part of the consumer to derive an understanding of the product from the term. *Money Store v. Harriscorp Finance Inc.,* 689 F.2d 666, 673 (7th Cir.1982). "A suggestive term suggests rather than describes an ingredient or characteristic of goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Telemed Corp. v. Tel-Med, Inc.,* 588 F.2d 213, 217 (7th Cir.1978).

Plaintiffs argue that the Yolk mark is entitled to protection because it is a suggestive term requiring a leap of imagination in order to associate the name with the product or service. In this regard, the Seventh Circuit has explained:

[A suggestive term] suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. The "imagination'" required to link a suggestive term with the corresponding product refers to the mental process required to connect a name that is incongruous or figurative

4. Similarly, in *Lettuce Entertain You,* the district court concluded that plaintiff Lettuce Entertain You was not using the term "lettuce" to refer to a green leafy vegetable. 703 F.Supp.2d at 784. Rather, it "use[d] the

noun 'lettuce' as a pun for the verb 'let us.'" *Id.* Therefore, the court concluded that the word "lettuce" as used by Lettuce Entertain You was not generic and was entitled to trademark protection.

with the product (e.g., "Roach Motel" with an insect trap or "Tide" with soap). . . .

*Forum Corp. of North America v. Forum Ltd.,* 903 F.2d 434, 443 (7th Cir.1990) (citations omitted). Defendants, however, argue that "[u]pon hearing the work yolk, no imagination is required to immediately conjure images of breakfast and egg based dishes." Defs.' Resp. [Dkt. # 26], at 7. Accordingly, Defendants argue the term is not suggestive. We disagree.

■ The word "yolk" in this context is suggestive and not merely a descriptive term. A reasonable consumer would not immediately think of a restaurant or restaurant services when hearing the word "yolk." Rather, a consumer would need to use his or her imagination to determine the nature of the services offered by a business named Yolk. A consumer would have to use his or her imagination to appreciate or perceive the suggestion that Yolk is a place that serves meals made with eggs. Accordingly, we conclude that Plaintiffs have shown a greater than negligible chance of success on the merits with respect to their contention that the name Yolk is suggestive and not generic or merely descriptive.[5]

## B. Whether Defendants Are Using "New Yolk New Yolk" In Commerce

In order for there to be trademark infringement, Defendants must have used the mark in commerce. There is no dispute that Defendant are using name New Yolk New Yolk in commerce. Thus, the use element is established.

## C. Whether There Is A Likelihood Of Confusion

■ Plaintiffs also must show that Defendants' use of New Yolk New Yolk as the name for their restaurant is likely to cause consumer confusion with Plaintiffs' Yolk. In the Seventh Circuit, seven factors are used to evaluate whether a likelihood of confusion exists: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products or services; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exits; and (7) whether the defendant intends to palm off its products as those of the plaintiff. *Ty,* 237 F.3d at 897–98.

5. Defendants argue that even if this Court were to conclude that the word "yolk" is suggestive, Plaintiffs' motion still must fail because they do not have the exclusive right to use the word "yolk." Plaintiffs argue that Peter Verros, the owner of Eggstacy and New Yolk New Yolk, incorporated Yolk Inc. on July 8, 2004 in the State of Illinois and began using that name in the development of an earlier restaurant he owned. *See* Defs.' Resp. [Dkt. # 26], Ex. F. It is undisputed, however, that Verros actually did business under the assumed name Solo 1530 and that Yolk Inc. no longer is in existence. Hearing Tr. at 12, 38–39. Verros testified at the hearing that he "never used the name Yolk to sell any products or restaurant services of any kind" (Hearing Tr. at 38) and never did business

using the word "yolk." *Id.* at 17. The exclusive right to use a suggestive term as a trade name vests in the party who first used the term in a particular market. *Bingham v. Inter–Track Partners,* 234 Ill.App.3d 615, 619, 175 Ill.Dec. 447, 600 N.E.2d 70, 73 (3d Dist. 1992). It is not disputed that Defendants did not register Yolk, Inc. as a state or federal service mark, but rather simply created a corporate entity with this name through the Illinois Secretary of State while actually doing business under the assumed name Solo 1530. Defendants' incorporation of an entity named Yolk, Inc. that then did business under the name Solo 1530 is neither evidence nor proof that Defendants first used the word "yolk" in commerce in the relevant market.

The Seventh Circuit has held that the likelihood of confusion test is "an equitable balancing test." *Barbecue Marx Inc. v. 551 Ogden Inc.*, 235 F.3d 1041, 1044 (7th Cir.2000). Although no one factor is dispositive and courts may assign varying weights to each of the factors, three of the factors are particularly important: (1) the similarity of the marks; (2) the defendant's intent; (3) and evidence of actual confusion. *Id.; see also Ty*, 237 F.3d at 897–98. In determining whether to grant a preliminary injunction, the court "must weigh the evidence pertaining to each likelihood of confusion factor and balance the seven factors against each other." *Barbecue Marx*, 235 F.3d at 1044. A preliminary injunction is a powerful remedy "never to be indulged in except in a case clearly demanding it." *Id.* (citations omitted).

### 1. *Similarity Between the Parties' Marks in Appearance and Suggestion*

Plaintiffs argue that the name New Yolk New Yolk is similar to and infringes upon its Yolk mark because New Yolk New Yolk uses the word "yolk" in its name and is substantially similar to Yolk's mark. In determining the similarity of the marks, a court should make the comparison between the two marks in light of what happens in the marketplace, not necessarily by looking at the two marks side by side. *Ty*, 237 F.3d at 898. Not only will the consuming public encounter a mark in written form but consumers also will hear the words spoken. In the restaurant services industry, there is no doubt that consumers are exposed to a trademark through word of mouth, and therefore, it is appropriate to look at the aural similarities as well. *Lettuce Entertain You*, 703 F.Supp.2d at 784–85.

In this case, we find that Yolk and New Yolk New Yolk are both visually and aurally dissimilar. Plaintiffs argue that the marks are similar in suggestion because both restaurants utilize the word "yolk" in their name. Plaintiffs, however, do not have the exclusive use of the word "yolk" in everyday speech or commerce. Further, Plaintiffs clearly are using the word "yolk" as in the yellow part of an egg while Defendants clearly are using the word "yolk" for their aural and visual parody on New York City.

New Yolk New Yolk does not infringe upon Yolk simply because New Yolk New Yolk uses the word "yolk" in its name. In comparing Yolk side by side with New Yolk New Yolk, it is clear that the marks are visually dissimilar. Plaintiffs' mark is comprised of the word "yolk" surrounded by the outline of an egg. The word "yolk" is written in black and the center of the "o" is yellow. In contrast, the sign for New Yolk New Yolk has the word "new" in white and the word "yolk" in yellow, and there are white and yellow stars above the name of restaurant. The words run together without spaces in between them— i.e., NewYolkNewYolk—alternating white and yellow text for each word. By pushing the words in this phrase together without spaces, Defendants associate the name of their restaurant with "New York, New York" rather than, as Plaintiffs contend, attempting to call their restaurant a new "Yolk." In addition, the typeface used by Plaintiffs and Defendants in their signage and marketing is different. Defendants' sign also indicates that New Yolk New Yolk is "by Eggstacy," clearly showing its affiliation with Defendant Eggstacy LLC and Defendants' two other restaurants by that name in the western suburbs. Hearing Tr. at 24.

Moreover, aurally, it is clear that New Yolk New Yolk is intended to evoke a reference to New York City and is not suggestive of the egg-related imagery con-

jured by Yolk. The name New Yolk New Yolk clearly is a parody of New York City in the State of New York (i.e., New York, New York) and the famous song "New York, New York" by Frank Sinatra. Parody strongly contributes to dispelling confusion. *Universal City Studios Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2nd Cir. 1984). We find Verros' testimony credible that he used the word "yolk" in New Yolk New Yolk, for its aural similarity to a version of the word "York" and in order to complete the parody of New York City. Hearing Tr. at 21–23. Verros testified that he came up with the idea for a New York City-themed restaurant in part because there is not any street access to the site he chose for his restaurant in Hinsdale, Illinois. *Id.* at 21–22. He testified that customers must enter New Yolk New Yolk through an alley or gang-way similar to the way patrons access many restaurants in New York City down a side-street or alley-way. *Id.* at 22–23.

The record demonstrates that New Yolk New Yolk is a New York City-themed restaurant in many ways. *See generally* Defs.' Resp.[Dkt. # 26], Ex E. Its internal decor includes murals and painting depicting cartoon-like images of the Statue of Liberty with an egg face, the Empire State Building, and the New York City skyline with eggs riding the subway against the skyline background. Its employees even wear t-shirts that say "I ♥ NY." *Id.* at 22–23. Kastanis admitted at the hearing that although he had never been inside New Yolk New Yolk, based on the pictures he had seen of New Yolk New Yolk, it is a New York-themed restaurant and that Yolk does not have any such theme. Hearing Tr. at 66.

Plaintiffs also argue that people may not refer to Defendants' restaurant as New Yolk New Yolk in everyday conversation and are more likely to refer to it simply as "New Yolk," thus increasing the likelihood of confusion. Pls.' Reply [Dkt. # 30], at 15. This is not persuasive. Defendants have no control over how consumers may or may not refer to their restaurant, and we must compare the names actually chosen by the parties and used by them in their businesses. There is no evidence that Defendants are advertising or marketing their restaurant as "New Yolk" or that they are encouraging this truncation of their chosen name. Verros testified that the name of his restaurant is New Yolk New Yolk and not simply New Yolk. Hearing Tr. at 21. Further, as noted earlier, Defendants' signage and marketing runs the phrase New Yolk New Yolk with the words pushed together which encourage customers to run all four words together in referring to the restaurant. There is no evidence to support the speculation that consumers will artificially shorten the name New Yolk New Yolk and simply refer to the restaurant as "New Yolk" as Plaintiffs contend.

Plaintiffs also contend that Defendants' name New Yolk New Yolk is "cumbersome" which makes it more likely that consumers will refer to it as New Yolk rather than New Yolk New Yolk. Pls.' Reply [Dkt. # 30], at 15. Yet, this argument tends to support Defendants' position that the names are aurally different. There is nothing cumbersome about the name Yolk which is short and simple whereas New Yolk New Yolk is longer and conveys an entirely different sound, concept and meaning, Indeed, if New Yolk New Yolk is cumbersome and Yolk is more elegant, for argument's sake, that further undercuts Plaintiffs' contention that the marks are confusingly similar.

Accordingly, because New Yolk New Yolk sounds different than Yolk, evokes different imagery and there is little similarity in the appearance and design of the two restaurants' signs and marketing, we

find that the marks are not substantially similar and that this factor weighs in favor of Defendants.

### 2. *Similarity of the Products or Services*

■ The second factor is the similarity of the services. The similarity of the products or services inquiry seeks to determine if the products or services "are the kind the public attributes to a single source." *Ty,* 237 F.3d at 899. It is not disputed that both Yolk and New Yolk New Yolk are restaurants that serve breakfast and lunch and that the menus used by both restaurants contain numerous egg-based dishes. Because New Yolk New Yolk offers services that are similar, although not identical, to Yolk, this factor weighs in favor of Plaintiffs.

### 3. *Area and Manner of Concurrent Use*

■ When considering the area and manner of concurrent use factor, the court must assess "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *Ty,* 237 F.3d at 900. When the goods or services are in close competition, marks need not be similar in order to find infringement. *Nike Inc. v. Just Did It Enter.,* 6 F.3d 1225, 1230 (7th Cir.1993). The Seventh Circuit has identified the following factors, among others, to consider when determining if a product or service is within the same area and manner of concurrent use: (1) the relative geographic distribution areas; (2) whether there exists direct competition between the products or services; and (3) whether the product is sold through the same marketing channels. *See Ty,* 237 F.3d at 900.

The *Barbecue Marx* case is instructive. In *Barbecue Marx,* plaintiff Smoke Daddy, a well known barbecue restaurant located in Wicker Park, a neighborhood just North and West of downtown Chicago, sought to enjoin defendant Bone Daddy from opening a barbecue restaurant in River West, another Chicago neighborhood approximately 1.4 miles away. 235 F.3d at 1045. The district court in *Barbecue Marx* weighed the area and concurrent use factor in plaintiff's favor finding that the restaurants were located generally in the same area because they were 1.4 miles apart and may have served many of the same customers. The Seventh Circuit, however, disagreed and emphasized that "context is key." *Id.* The Seventh Circuit recognized that these neighborhoods were in the heart of Chicago and that "[i]n such a densely populated area, 1.4 miles was quite a distance, especially in an area crowded with dozens of restaurants." *Id.* The Seventh Circuit found that the district court erred when it weighed this factor in favor of plaintiff Smoke Daddy.

There is little evidence that Yolk and New Yolk New Yolk operate in the same geographic area. The Yolk restaurants are located in and around downtown Chicago, in Cook County, while New Yolk New Yolk is located in the western suburb of Hinsdale, in DuPage County. Hearing Tr. at 56. The parties stipulated that the distance between the restaurants is between 16 and 18 miles. *Id.* at 33. Although both restaurants serve breakfast and lunch and include similar dishes on their menus, there is little evidence of direct competition. Kastanis testified that at least 30% of Yolk's business comes from out of town tourists visiting Chicago and staying in downtown hotels (*Id.* at 64) while Verros testified that very little, if any, of his business comes from out of town tourists or residents of Chicago. *Id.* at 31. Rather, Verros testified that New Yolk New Yolk is a neighborhood restaurant serving the residents of suburban Hinsdale. *Id.* at 31.

Indeed, Kastanis acknowledged in an email that he sent to Verros on February

17, 2010, before this lawsuit was filed, that "[n]ormally, I wouldn't care being that you are in the suburbs and would wish you luck ...." Hearing Tr. at 54, Ex. 8. Kastanis' common sense acknowledgment, before the lawsuit was filed, that Verros' restaurant in the western suburbs of Chicago, in DuPage County, should not be a concern for his restaurants in the City of Chicago in Cook County is telling. There is no evidence of direct competition between Yolk and New Yolk New Yolk. Because the restaurants are not located in the same geographic area and do not appear to be in direct competition, this factor weighs in favor of Defendants.

### 4. Degree of Care Likely to be Exercised by Consumers

 Generally, "[t]he more widely accessible and inexpensive the product and services, the more likely that consumers will exercises a lesser degree of care and discrimination in their purchases." *CAE Inc. v. Clean Air Eng'g. Inc.*, 267 F.3d 660, 683 (7th Cir.2001). Plaintiffs argue that Yolk and New Yolk New Yolk are competing for restaurant goers seeking a relatively casual and modestly-priced breakfast or lunch, and therefore, their consumers are assumed to exercise a lesser degree of care. Yet, at the same lime, Plaintiffs repeatedly reference and emphasize the rave reviews that Yolk has received as an upscale breakfast destination and "a common perception among knowledgeable parties that the Yolk brand is well-known and well received by the public." Pls.' Memorandum [Dkt. # 11], at 9; Pls.' Reply [Dkt. # 30], at 10–12; Hearing Tr. at 60–61.

Again, the *Barbecue Marx* case is instructive. In *Barbecue Marx*, the Seventh Circuit held that, in light of the reviews by food critics that plaintiff Smoke Daddy is a critically acclaimed restaurant, "customers will exercise a reasonable degree of care when planning to dine at a restaurant of Smoke Daddy's caliber." 235 F.3d at 1045. As a result, the Seventh Circuit concluded that it was clear error for the district court to conclude that patrons wanting to go to Smoke Daddy might, in fact, "wing-it" and end up at Bone Daddy instead. *Id.* The Seventh Circuit found that "customers will exercise a reasonable degree of care when planning to dine at a restaurant of Smoke Daddy's caliber." *Id.*

A similar analysis is appropriate in this case. Plaintiffs assert that Yolk has received "widespread critical acclaim." Pls.' Memorandum [Dkt. # 11], at 9. Specifically, Plaintiffs introduced into evidence that Yolk was voted the number one breakfast restaurant in Chicago in 2008 by Fox News viewers and that it was featured on the cover of DiningOut Chicago this past summer. Hearing Tr. at 60–61; Defs.' Resp. [Dkt. # 26], Ex. E, Kastanis Dep. at 36–38. Kastanis also testified in his deposition that Yolk customers are picky about where they eat. Defs.' Resp. [Dkt. # 26] Ex. E, Kastanis Dep. at 16. In addition, Verros testified that the demographic of New Yolk New Yolk's customers is the "upper, upper, upper middle class" residents of Hinsdale and that they too are "very picky." Hearing Tr. at 31.

Based on the evidence submitted by Plaintiffs and the testimony of both Kastanis and Verros, we find that customers of both Yolk and New Yolk New Yolk likely will exercise a reasonable degree of care when choosing to dine at the restaurant of their choice—whether it is Yolk or New Yolk New Yolk—and that this factor weighs in favor of Defendants.

### 5. Strength of Plaintiffs' Marks

 The strength of the trademark "refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular ... source." *Eli Lilly & Co. v. Natural Answers Inc.*, 233 F.3d 456, 464 (2000). Defendants contend

that the Yolk mark is not strong based largely on the argument that it is generic, an argument we rejected earlier. Plaintiffs contend that Yolk has been registered as a trademark for restaurant services since 2007, and consumers associate the word "yolk" with Yolk and nothing else. That also is a bit of an overstatement.[6] However, "[a] party's subjective, self-serving view of its own alleged trademark is not competent evidence." *Spex Inc. v. The Joy of Spex, Inc.*, 847 F.Supp. 567, 577 (N.D.Ill.1994). Although Yolk may have established some recognition and acclaim in and around downtown Chicago, that reputation does not necessarily extend to the suburbs or, more specifically, to Hinsdale 16 to 18 miles away. Still, because Yolk has established name recognition in and around downtown Chicago, this factor weighs slightly in Plaintiffs' favor.

### 6. *Actual Confusion*

Actual confusion is entitled to substantial weight in determining the likelihood of a plaintiff's success on the merits. *International Kennel Club of Chicago Inc. v. Mighty Star Inc.*, 846 F.2d 1079, 1089–90 (7th Cir.1988). The weight given to evidence of actual confusion, however, varies according to the identity of those confused, the value of the services involved, and the context in which the confusion occurs. *Imperial Service Systems Inc. v. ISS Int'l Service System Inc.*, 701 F.Supp. 655, 659 (N.D.Ill.1988). Although Plaintiffs have offered some evidence of confusion, there is no evidence that Yolk's customers are going to New Yolk New Yolk with the misunderstanding that they are patronizing a restaurant affiliated with Yolk or that New Yolk New Yolk is or is likely to be syphoning breakfast and lunch business from Yolk.

In support of their argument that there is a likelihood of confusion, Plaintiffs have submitted the affidavits of three Yolk employees discussing purported of customer confusion. *See* Pls.' Brief [Dkt. # 11], Exs. E, F and G. At their depositions, however, these employees were not able to testify with any specificity regarding these customer inquiries or the purported instances of consumer confusion, to identify any customers who allegedly were confused or when these encounters occurred. Defs.' Resp. [Dkt. # 26], Ex. M, Grande Dep. at 15–21; Ex. I, Sakkas Dep. at 9, 11; Ex N, Lestos Dep. at 9–14. Testimony by owners and employees has been found to be weak evidence of actual confusion. *Echo Travel Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1267 (7th Cir. 1989). Even if some Yolk customers inquired about whether Yolk and New Yolk New Yolk were affiliated, which is the gist of the testimony offered by the Yolk employees, evidence of occasional inquiries is superficial and trivial in the absence of evidence of actual diversion of business. *Telemed Corp. v. Tel–Med, Inc.*, 588 F.2d 213, 220 (7th Cir.1978); *Spex Inc. v. The Joy of Spex, Inc.*, 847 F.Supp. 567, 579 (N.D.Ill.1994).

Anthony Grande is a general manager at Yolk located in the South Loop of downtown Chicago, and Plaintiffs have submitted his affidavit and deposition testimony in support of their claim of actual confusion. At his deposition, Grande testified: "I don't recall each instance or even the first time that a customer mentioned this new location to me. I don't recall the exact instance or anything like that." Defs.' Resp. [Dkt. # 26], Ex M, Grande Dep. at 15. Despite statements in his affidavit, Grande testified that he never received a phone call in which a customer

---

**6.** See testimony of Plaintiffs' witnesses, discussed in the following section, that they do not immediately associate the word "yolk" with Plaintiffs' restaurant.

stated he or she was confused about affiliation between Yolk and New Yolk New Yolk. *Id.* at 19. He testified that he never received a question from a customer asking if New Yolk New Yolk was a "new" Yolk, and he did not have any personal knowledge of any customer believing that to be true. *Id.* at 19–21. In addition, Grande testified that he had not received any phone calls within the past two months regarding New Yolk New Yolk. *Id.* at 32. In fact, in total, Grande testified that he received only six calls and in-person inquiries over a four month period. *Id.* at 32.

Another Yolk employee, Dino Sakkas, who also provided an affidavit and deposition testimony in support of Plaintiffs' claim of actual confusion, only was able to recall two times he had received questions regarding New Yolk New Yolk. Defs.' Resp. [Dkt. # 26], Ex. I, Sakkas Dep. at 7. Sakkas was unable to recall any specific details regarding these incidents and did not recall any customer asking whether there was an affiliation between Yolk and New Yolk New Yolk. *Id.* at 9, 11.

In addition to the Yolk employees, Plaintiffs also submitted the third-party testimony of Diana McKay–Menna and Leonard Thomas. *See generally* Defs.' Resp. [Dkt. # 26], Exs. A and B. McKay–Menna is a regular customer at Yolk's Wells Street location, and she testified in her affidavit and at her deposition about her 18–year old niece's statement during a conversation at a family get-together. Defs.' Resp. [Dkt. # 26], Ex. A. McKay–Menna testified that when her niece heard McKay–Menna talking about the Yolk restaurant in her neighborhood and how much she and her husband liked it, the niece responded that she had eaten at the "Yolk" in Hinsdale. *Id.* at 12–14. McKay–Menna testified that she "was fair-

ly sure that Yolk did not have a Hinsdale location." *Id.* at 14. She also testified that her niece never said she was confused. *Id.* at 13–14.

Since McKay–Menna's niece did not testify or submit an affidavit of her own, we do not know what was in her mind. McKay–Menna, however, was not confused because she did not think Yolk had a Hinsdale location (*Id.* at 13), and there is nothing in the record to indicate that her niece went to New Yolk New Yolk in Hinsdale thinking she was going to a restaurant affiliated with Yolk. In fact, McKay–Menna admitted in her deposition that if she heard the name of another restaurant with the word "yolk" in the name, she would not automatically think of Yolk. *Id.* at 16. Thus, whether or not McKay–Menna's niece was confused by McKay–Menna's reference to the Yolk restaurant in her neighborhood, having just eaten at New Yolk New Yolk in Hinsdale, this is very weak evidence of the kind of customer confusion that would cause concern under the Lanham Act or that would constitute evidence of actual confusion for purposes of our analysis.

Leonard Thomas works in the Streeterville[7] building dock where Yolk just opened its third location. Thomas testified at his deposition that he was "out in Oakbrook looking for a place to eat" and he went to Eggstacy. He testified that he was confused when he saw a take out menu referencing both Eggstacy and New Yolk New Yolk. *Id.* at 21–25. When Thomas saw the menu, he asked whether New Yolk New Yolk had any affiliation with Yolk. *Id.* at 21. He was told "No." *Id.* Although Thomas testified he was confused, he also testified that he was told by an employee of Eggstacy that there was

---

7. Streeterville is a Chicago neighborhood just off North Michigan Avenue and north of Chicago's downtown Loop.

no affiliation between Yolk and New Yolk New Yolk immediately upon inquiry. *Id.* at 23. Thomas also testified that if he sees the word "yolk" he does not automatically assume there is an affiliation with the restaurant he knows as Yolk. *Id.* at 19. Again, Thomas is not someone who went to New Yolk New Yolk in Hinsdale thinking that it was affiliated with Yolk in Chicago. And his question as to whether there was any affiliation between the restaurants was quickly answered in the negative.

In the final analysis, although Plaintiffs presented some purported evidence of confusion, it is weak and unpersuasive. None of the Yolk employees could identify with specificity any of the telephone calls they received from potentially confused consumers, nor did they point to diversion of any business from Yolk as a result. The testimony of McKay–Menna and Thomas demonstrates that neither went to New Yolk New Yolk confused that they were going to a restaurant affiliated with Yolk nor did either witness provide evidence of anyone that had done so. McKay–Menna testified that she did not think Yolk had a location in Hinsdale. Thomas testified that he went to Eggstacy in Oak Brook, Illinois, by happenstance. When he saw a reference to Eggstacy's affiliate, New Yolk New Yolk, he inquired about any affiliation between Yolk and New Yolk New Yolk and promptly was told that New Yolk New Yolk did not have any affiliation with Yolk.

Because we find that the evidence of confusion proffered by Plaintiff is not strong and there is no evidence of any actual diversion of business or even a realistic risk of same,[8] this factor does not weigh heavily in Plaintiffs' favor. But this factor does not weigh significantly in Defendants' favor either because there is evidence of at least some potential for confusion between the names Yolk and New Yolk New Yolk under certain circumstances and in limited contexts, though without any obvious or measurable consequences. At best, Plaintiffs have introduced evidence of "occasional superficial confusion" that has been found to be unpersuasive of actual confusion. *Telemed Corp.*, 588 F.2d at 220; *Spex, Inc.*, 847 F.Supp. at 579. Thus, even if we were to put this factor in Plaintiffs' column, it would not provide much weight in support of Plaintiffs' motion.

### 7. Defendants' Intent to Palm Off Their Service as That of Plaintiffs

The last factor in the analysis concerning likelihood of confusion is the intent of the defendant to palm off his product or service as that of the plaintiff. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 644 (7th Cir.2001). It is not disputed that Defendants knew about Yolk before opening New Yolk New Yolk. Intent to pass off, however, cannot be inferred merely from a defendant's knowledge of the mark. *Personeta Inc. v. Persona Software Inc.*, 418 F.Supp.2d 1013, 1019 (N.D.Ill.2005). Verros admits that he knew about Yolk before he opened New Yolk New Yolk. Hearing Tr. at 33–34. This knowledge alone is not enough to show intent on the part of Verros and Defendants. *See Barbecue Marx*, 235 F.3d at 1046. The Seventh Circuit has suggested that a court should evaluate, among other considerations, whether the theme, style and location of the restaurant are similar in order to evaluate a defendant's intent. *Id.*

There is no evidence in the record that Defendants intended to pass off New Yolk New Yolk as a restaurant affiliated with Yolk. In fact, the evidence shows the opposite is true. Defendants have advertised New Yolk New Yolk as affiliated with

---

**8.** Kastanis testified both in his deposition and at the hearing that sales at Yolk have continually increased. Defs.' Resp. [Dkt. # 26], Ex. E, Kastanis Dep. at 25–32; Hearing Tr. at 58.

Eggstacy, and we find Verros' testimony credible that New Yolk New Yolk is a New York-themed restaurant. Hearing Tr. at 21–23. Furthermore, the t-shirts worn by New Yolk New Yolk's employees say "I NY" (identical to the famous t-shirts about New York City) and not "I Yolk" or "I New Yolk." Plaintiffs do not contend that the "NY" on the t-shirts is intended to be a reference to "New Yolk." Further, it is relevant to note that New Yolk New Yolk is geographically closer to its sister restaurants named Eggstacy in the western suburbs than it is to Yolk which only has locations in and around downtown Chicago. And Defendants' intent to build upon the relationship between Eggstacy and New Yolk New Yolk also is shown by the reference to New Yolk New Yolk in Eggstacy's menus. Defs.' Resp. [Dkt. # 26], Ex. B. at 10. Given the evidence in the record, the Court concludes that this factor weighs in favor of Defendants.

### 8. Balancing the Factors for Likelihood of Confusion

█ Upon weighing each of the factors, the Court believes that Plaintiffs have failed to show a likelihood of success on their ability to demonstrate likelihood of confusion based on the evidence presented. Of the seven factors a court must consider, we find that four of the factors weigh in Defendants' favor and only three weigh in Plaintiffs* favor (even if we include the weak evidence of actual confusion in Plaintiffs' column). Further, of the three factors that we could count for Plaintiffs, two only weigh slightly in Plaintiffs' favor. The key factors that weigh in Defendants' favor are the lack of similarity between Yolk and New Yolk New Yolk in appearance and suggestion, the lack of evidence regarding Defendants' wrongful intent and the very minimal, superficial evidence of actual confusion.

Taken as a whole, the Court concludes that Plaintiffs do not have greater than a negligible chance of showing likelihood of confusion, and therefore, we conclude that Plaintiffs do not have a greater than negligible chance of succeeding on the merits of their claim for trademark infringement. If we were to conclude that Plaintiffs had a greater than negligible chance on succeeding on the merits, then we next would have to consider whether an adequate remedy at law exists and whether Plaintiffs will suffer irreparable harm if the injunction is not granted. For the sake of finality, we engage in that analysis below.

## II. Balancing of the Harms

█ The Seventh Circuit uses a sliding scale approach in which the more likely it is that a plaintiff will succeed on the merits, then the less the balance of irreparable harms must favor the plaintiff's position. Id. at 895 (citing Abbott Labs., 971 F.2d at 12). The Seventh Circuit has recognized that the sliding scale approach "is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" Ty, 237 F.3d at 896–897 (quoting Abbott Labs., 971 F.2d at 12). It is a two-step process in which the court first must assess the plaintiff's chance of success and next must balance the hardships in accordance with its likelihood of success determination. Ty, 237 F.3d at 896 (citing Storck USA LP v. Farley Candy Co., 14 F.3d 311, 314 (7th Cir.1994)), Although initially the court need only determine that the plaintiff has some likelihood of success on the merits, at the balancing stage, the court must quantify how great the likelihood of success on the merits is in order to properly balance the harms. Id.

█ In this case, because we have found that Plaintiffs' likelihood of success on the merits is negligible, Plaintiffs must

make a proportionately stronger showing that the balance of harms weighs in their favor. *Storck USA L.P. v. Farley Candy Co.,* 14 F.3d 311, 315 (7th Cir.1994) ("Once the district court determined that Storck's likelihood of success on the merits of its claim was slight, it required Storck to make proportionately stronger showing that the balance of harms was in its favor."). Based on the record before us, we find that Plaintiffs have not met their burden of showing that the harm they will suffer if the injunction is denied is substantially greater than the harm Defendants would suffer if the injunction were granted.

The balance of hardships weighs in favor of Defendants. Plaintiffs have submitted only a couple of instances of purported and superficial confusion and have not established at this stage substantial confusion affecting consumers' decisions in where they go for breakfast or lunch. The Court is aware that, in trademark infringement cases, some irreparable injury is presumed. *International Kennel Club,* 846 F.2d at 1092. Nevertheless, in granting an injunction for Plaintiffs, we effectively would force Defendants to stop using their chosen name for their restaurant and grant Plaintiffs the relief they desire without a trial on the merits at which we have found Plaintiffs do not have more than a negligible chance of prevailing. *See A La Carte, Inc. v. Culinary Enterprises, Inc.,* 1997 WL 534493, at \*7 (N.D.Ill. Aug. 23, 1997) (holding that "the lack of evidence of significant confusion as of this date militates against the extra-ordinary relief plaintiff seeks"). Further, Verros testified at the hearing that if the injunction were granted precluding New Yolk New Yolk from using its name, Defendants would loose "thousands, thousands, thousands of dollars for signage, for menus, for good will." Hearing Tr. at 34.

In some cases, injunctive relief is necessary to protect the interests of a plaintiff in its trademark. That protection, however, is not required in this case. Given the lack of evidence of significant confusion or business diversion, the fact that the parties' markets do not seem to overlap, and the significant injury that Defendants will suffer from an injunction, we conclude that the extraordinary remedy of a preliminary injunction is not justified at this time.

## III. Public Interest

Finally, the court must consider the public interest in denying or granting the injunction. *Ty,* 237 F.3d at 895. Enforcement of trademark law serves the public interest by reducing consumer confusion. *Eli Lilly & Co.,* 233 F.3d at 469. On the other hand, "trademark protection should not interfere with traditional policies of a competitive market." *Platinum Home Mortgage Corp. v. Platinum Fin. Group Inc.,* 149 F.3d 722, 726 (7th Cir. 1998). Courts have recognized that "[a]n essential component of competition is availability of words for advertising, promoting and informing the public." *Best Vacuum Inc. v. Ian Design Inc.,* 2005 WL 1185817, at \*17 (N.D.Ill. Jan. 18, 2005).

Defendants argue that Plaintiffs do not have a monopoly on the word "yolk" in the market place generally, and we agree. Based on the record before us, we find that the potential for consumer confusion is small in this case and is outweighed by the public harm that would be caused by allowing the word "yolk" to be monopolized by Plaintiffs in the way they seek here. At base, although Plaintiffs and Defendants use the four letter word "y-o-l-k" in connection with their breakfast and lunch restaurants, they use it in very different ways, contexts, and markets, and they intend to suggest very different

themes and images. Accordingly, we find that the public interest is served by denying the preliminary injunction sought by Plaintiffs.

## CONCLUSION

For the reasons stated in the Court's Memorandum Opinion and Order, Plaintiffs' motion for a preliminary injunction [Dkt. # 4] is denied. This is a final and appealable order.

It is so ordered.